**From:** sop@cscinfo.com <sop@cscinfo.com>
**Sent:** Wednesday, January 22, 2020 1:55 PM
**To:** Josephine Benkers <jbenkers@planosynergy.com>
**Subject:** Notice of Service of Process - Transmittal Number: 21003778

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.



## NOTICE OF SERVICE OF PROCESS

**Transmittal Number: 21003778**
(Click the Transmittal Number to view your SOP)

Pursuant to client instructions, we are forwarding this summary and Notice of Service of Process.

| | |
|---|---|
| **Entity:** | Barnett Outdoors LLC |
| **Entity I.D. Number:** | 3514881 |
| **Entity Served:** | Barnett Outdoors, LLC, a/k/a Barnett Outdoors, Inc., and Barnett Crossbows |
| **Title of Action:** | Troy Jarrell, Jr. vs. Barnett Outdoors, LLC, a/k/a Barnett Outdoors, Inc., and Bar |
| **Document(s) type:** | Summons/Complaint |
| **Nature of Action:** | Product Liability |
| **Court/Agency:** | Mingo County Circuit Court, West Virginia |
| **Case/Reference No:** | 19-C-158 |
| **Jurisdiction Served:** | Florida |
| **Date Served on CSC:** | 01/21/2020 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | WV Secretary of State on 01/10/2020 |
| **How Served:** | Certified Mail |

**Sender Information:**
Mark H. Mitchell
304-235-3902

**Primary Contact:**
Josephine  Benkers
Plano Synergy

Information contained on this transmittal form is for record keeping, notification and forwarding the attached do
does not constitute a legal opinion. The recipient is responsible for interpreting the document(s) and taking appr

251 Little Falls Drive, Wilmington, Delaware 19808-1674
(888) 690-2882  |  sop@cscglobal.com



EXHIBIT
A

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305

USPS CERTIFIED MAIL™



**9214 8901 1251 3410 0002 6469 95**



**Mac Warner**
Secretary of State
State of West Virginia
**Phone:** 304-558-6000
886-767-8683
**Visit us online:**
www.wvsos.com

BARNETT OUTDOORS, LLC
AKA BARNETT OUTDOORS INC. AND BARNETT
CROSSBOWS
CORPORATION SERVICE COMPANY
1201 HAYS STREET
TALLAHASSEE, FL 32301

**Control Number:** 251461

**Defendant:** BARNETT OUTDOORS, LLC
CORPORATION SERVICE
COMPANY
1201 HAYS STREET
TALLAHASSEE, FL 32301 US

**Agent:** AKA BARNETT OUTDOORS INC.
AND BARNETT CROSSBOWS

**County:** Mingo

**Civil Action:** 19-C-158

**Certified Number:** 92148901125134100002646995

**Service Date:** 1/10/2020

I am enclosing:

**1 summons and complaint**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in your name and on your behalf.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your name and on your behalf as your attorney-in-fact. Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, not to the Secretary of State's office.*

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State

IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

TROY JARRELL, JR., and KIMBERLY JARRELL,

    Plaintiffs,

v.                                    Civil Action No. 19-C-158

BARNETT OUTDOORS, LLC, a Florida corporation,
a/k/a BARNETT OUTDOORS, INC., and BARNETT CROSSBOWS,
PLANO SYNERGY HOLDING INC., a Delaware Corporation,
and MOUNTAIN HERITAGE OUTDOORS, INC.,
a/k/a MOUNTAIN HERITAGE OUTDOORS & TAXIDERMY
and PINE MOUNTAIN ARCHERY,

    Defendants.

---

SUMMONS

---

TO THE ABOVE NAMED DEFENDANT:    BARNETT OUTDOORS, LLC,
                                     a/k/a BARNETT OUTDOORS, INC.,
                                     and BARNETT CROSSBOWS
                                   c/o Corporation Service Company,
                                      Notice of Process Agent
                                   1201 Hays Street
                                   Tallahassee, Florida 32301

    IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required

to serve upon Plaintiff's attorney, Mark H. Mitchell, whose address is 30 East Second Avenue,

Williamson, West Virginia 25661, an answer, including any related counterclaim you may have, to the

complaint filed against you in the above-styled civil action. A true copy of the complaint is herewith

delivered to you.

    You are required to serve your answer within thirty (30) days after service of this summons upon

you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for

the relief demanded in the complaint and you will be thereafter barred from asserting in another action

any claim you may have which must be asserted by counterclaim in the above-styled civil action.

DATED: Oct 29, 2019

                                         Clerk of Court

<u>IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA</u>

TROY JARRELL, JR., and KIMBERLY JARRELL,

    Plaintiffs,

v.                              Civil Action No. 19-C-158

BARNETT OUTDOORS, LLC, a Florida corporation,
a/k/a BARNETT OUTDOORS, INC., and BARNETT CROSSBOWS,
PLANO SYNERGY HOLDING INC., a Delaware Corporation,
and MOUNTAIN HERITAGE OUTDOORS, INC.,
a/k/a MOUNTAIN HERITAGE OUTDOORS & TAXIDERMY
and PINE MOUNTAIN ARCHERY,

    Defendants.

*MINGO COUNTY CIRCUIT CLERK   2019 OCT 29  PM 3: 50   ADMITTED TO RECORD*

<u>COMPLAINT</u>

    NOW COME Plaintiffs Troy Jarrell, Jr., and Kimberly Jarrell and, for this cause of action, allege the following:

1.    That this Complaint includes allegations of negligence, strict liability, breach of warranty, violation of the West Virginia Consumer Credit and Protection Act, and product liability claims against the Defendants; and, seeks to collect a monetary judgment against the Defendants, jointly and severally, for the personal injury and related claims of Plaintiffs.

2.    That Plaintiffs Troy Jarrell, Jr., and Kimberly Jarrell were and are currently residents of Delbarton, Mingo County, West Virginia.

3.    That on 31 October 2017, Plaintiff Troy Jarrell, Jr., was deer hunting with a Camo Barnett Ghost 410 1.5-5X Scope Crossbow in Ragland, Mingo County, West Virginia. The crossbow is capable, but should not be, of capturing the string without the anti-dry fire mechanism engaging. In that condition, even without an arrow inserted, the crossbow will unexpectedly fire. The crossbow discharged when it should not have and caused severe injuries to the hand and person of Plaintiff Troy Jarrell, Jr.

4.    The Defendants owed the Plaintiffs a duty to design, manufacture and sell a safe and non-defective crossbow and the Defendants negligently breached that duty, proximately causing the Plaintiffs' injuries and subjecting the Defendants to liability for negligence.

5.    The crossbow the Defendants put into commerce was not reasonably safe for its intended use, was defective, and unreasonably dangerous to the user by virtue of a defective design and/or

a manufacturing defect for which the Defendants are strictly liable.

6.     The crossbow was defective and not reasonably safe for its intended use due to absent and inadequate warnings that a reasonably prudent manufacturer and seller should have included at the time the product was made and sold for which the Defendants are subject to liability for negligence and are strictly liable.

7.     At the time of the marketing and selling of the crossbow, the manufacturer and seller made express and implied promises, descriptions, and warranties regarding the crossbow that were relied upon by the Plaintiffs and part of the basis of the bargain made between the Defendants as manufacturers and sellers and the Plaintiffs as consumers, including but not limited to, an express warranty that the crossbow had a safe and fool-proof anti-dry fire mechanism and the implied warranties of merchantability and fitness for a particular purpose, all of which warranties were untrue and were breached by the Defendants.

8.     The Defendants also violated the West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-1 *et seq.*, for their unfair methods of competition and deceptive acts or practices, including, *inter alia*, representing that their goods have characteristics, uses or benefits that they do not have.

9.     The Defendants knew of the defective condition and propensity for harm of the crossbow, both prior to and after the sale of the crossbow to the Plaintiffs, and intentionally failed to warn the Plaintiffs or to recall the crossbow, for which intentional tortious conduct the Defendants are subject to liability for punitive damages.

10.    The foregoing enumerated acts of negligence and intentional conduct, each alone and collectively, proximately caused the Plaintiffs' injuries.

11.    That Defendant Barnett Outdoors, LLC, the manufacturer of the subject crossbow, was and is a Florida corporation not authorized to do business in West Virginia but is conducting business in West Virginia. Defendant Barnett Outdoors, LLC, is also known as Barnett Outdoors, Inc., and Barnett Crossbows. Its principal office address is 955 Live Oak Street, Tarpon Springs, Florida 34689. Its designated service of process agent is Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.

12.    That Plano Synergy Holding Inc. is the parent company and otherwise affiliated with and/or exercises control of Defendant Barnett Outdoors, LLC, and is a Delaware corporation not authorized to do business in West Virginia but is conducting business in West Virginia. Its principal office address is 431 E South Street, Plano, Illinois 60545. Its designated service of process agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

13.   That Defendant Mountain Heritage Outdoors, Inc., the retailer of the subject crossbow, was and is a West Virginia corporation that has been authorized to do business in the state of West Virginia since 25 January 2007. Defendant Mountain Heritage Outdoors, Inc., is also known as Mountain Heritage Outdoors & Taxidermy and Pine Mountain Archery. Its principal office address is 607 Athens Road, Princeton, West Virginia 24740. Its designated notice of process agent is Brian Mabe, 607 Athens Road, Princeton, West Virginia 24740.

14.   That Defendant Mountain Heritage Outdoors, Inc., tortiously sold the defective crossbow to Plaintiff Troy Jarrell, Jr., through its online eBay store, Pine Mountain Archery (http://www.ebaystores.com/Pine-Mountain-Archery).

15.   That the Plaintiffs allege that the actions of the Defendants were so blatantly and grossly wanton and reckless and with a complete disregard for the Plaintiffs' safety as to constitute an intent to deliberately and intentionally injure the Plaintiffs, for which the Plaintiffs are entitled to recover compensatory and punitive damages.

16.   That as a direct and proximate result of the negligence and/or intentional acts of the Defendants, Plaintiff Troy Jarrell, Jr., has sustained permanent injury and disfigurement, physical and mental pain, both in the past and in the future, medical expenses, both in the past and in the future, an impairment of his earning capacity, and a diminution of his ability to enjoy life.

17.   That as a direct and proximate result of the negligence and/or intentional acts of the Defendants, Plaintiff Kimberly Jarrell has also suffered an additional and individual wrong within her own right because she has helped care for, nurse and take care of Plaintiff Troy Jarrell, Jr., and she has been deprived of the society, consortium and support of Plaintiff Troy Jarrell, Jr.

WHEREFORE, Plaintiffs Troy Jarrell, Jr., and Kimberly Jarrell demand the following:

1. Judgment for compensatory damages in an amount that exceeds the jurisdictional limits of this Court from each of the Defendants.
2. Judgment in favor of the Plaintiffs for punitive damages.
3. Judgment in favor of the Plaintiffs for costs and attorney fees herein expended.
4. For a trial by jury.
5. For all other proper orders and relief as the Plaintiffs may appear to be entitled.

TROY JARRELL, JR., and
KIMBERLY JARRELL,
Plaintiffs.

_____

MARK H. MITCHELL,
LAWYER

Page 3 of 4

MARK H. MITCHELL
PLAINTIFFS' LAWYER
West Virginia State Bar No. 2582
30 East Second Avenue
Williamson, WestVirginia 25661
Telephone: (304)235-3902
Facsimile: (304) 235-3903
E-mail: *mhm@markhmitchell.com*

Page 4 of 4

 **(/DEFAULT.ASPX)**

Civil
Case Information
Thirtieth Judicial Circuit of Mingo County


19-C-158
Judge: MIKI THOMPSON
TROY AND KIMBERLY JARRELL C/O MARK MITCH VS. BARNETT OUTDOORS LLC -


**Plaintiff(s)**

            **Plaintiff Attorney(s)**

JARRELL, TROY

        MR. MARK H. MITCHELL


**Defendant(s)**

            **Defendant Attorney(s)**

BARNETT OUTDOORS LLC
MOUNTAIN HERITAGE OUTDOORS INC
PLANO SYNERGY HOLDIN

                N/A


Date Filed: 10/29/2019
Case Type: JUDGMENT
Appealed: 0
Final Order Date: 01/07/2021
Statistical Close Date: 01/07/2021


| Line | Date | Action / Result |
|------|------|-----------------|
| 0001 | 10/29/2019 | COMPLAINT, SUMMONS, CIVIL CASE (PERSONAL SERVICE) FILED; |
| 0002 | 01/16/2020 | ACCEPTED SERVICE OF PROCESS SOS ON BEHALF OF MOUNTAIN HERITAGE |
| 0003 | | OUTDOORS,ONC. FILED; |
| 0004 | 01/16/2020 | ACCEPTED SERVICE OF PROCESS SOS ON BEHALF OF PLANO SYNERGY |
| 0005 | | HOLDING INC. FILED; |
| 0006 | 01/16/2020 | ACCEPTED SERVICE OF PROCESS SOS ON BEHALF OF BARNETT OUTDOORS, |
| 0007 | | LLC FILED; |
| 0008 | 02/03/2020 | DEF.BARNETT OUTDOORS,LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO |
| 0009 | | PLTF'S COMPLAINT ,CIVIL CASE,MOUNTAIN HERITAGE OUTDOORS,INC'S |
| 0010 | | MOTION TO DISMISS FOR FAILURE TO STATE CLAIM,MEMORANDUM OF LAW |
| 0011 | | IN SUPPORT OF ITS MOTION TO DISMISS AND JOINT STIPULATION AND |
| 0012 | | PROPOSED ORDER DISMISSING DEFENDANT PLANO SYNERGY HOLDING INC. |
| 0013 | | CERTIFICATE OF SERVICE FILED; |

EXHIBIT

**B**

ALL-STATE LEGAL®

| 0014 | 02/18/2020 | JOINT STIPULATION AND AGREED ORDER DISMISSING DEFENDANT PLANO |
| 0015 | | SYNERY HOLDING INC. ENTERED; |
| 0016 | 02/28/2020 | NOTICE OF HEARING,CERTIFICATE OF SERVICE FILED; |
| 0017 | 03/04/2020 | NOTICE OF HEARING FILED; |
| 0018 | 04/17/2020 | ORDER CONTINUING AND RESCHEDULING HEARING ENTERED; |
| 0019 | 06/08/2020 | MOTION FOR ADMISSION PRO HAC VICE OF CHRISTOPHER T.SHEEAN |
| 0020 | | PROPOSED ORDER FILED; |
| 0021 | 06/11/2020 | ORDER AUTHORIZING PRO HAC VICE ADMISSION OF CHRISTOPHER T. |
| 0022 | | SHEEAN ENTERED; |
| 0023 | 07/06/2020 | AMENDED NOTICE OF HEARING FILED; |
| 0024 | 07/06/2020 | CERTIFICATE OF SERVICE FILED; |
| 0025 | 07/07/2020 | AMENDED NOTICE OF HEARING FILED; |
| 0026 | 07/13/2020 | NOTICE OF APPEARANCE AND PLTF'S RESPONSE TO DEFENDANT MOUNTAIN |
| 0027 | | HERITAGE OUTDOORS,INC.'S MOTION TO DISMISS FOR FAILURE TO STATE |
| 0028 | | A CLAIM,CERTIFICATE OF SERVICE FILED; |
| 0029 | 07/23/2020 | NOTICE OF DEPOSITION OF DEFENDANT,PURSUANT TO RULE 30(B)(7) & |
| 0030 | | RULE 34 REQUEST FOR DOCUMENTS ,CERTIFICATE OF SERVICE FILED; |
| 0031 | 07/27/2020 | PLTF.'S FIRST SET OF REQUEST FOR ADMISSIONS TO DEFENDANT |
| 0032 | | MOUNTAIN HERITAGE OUTDOORS,INC.,CERTIFICATE OF SERVICE FILED; |
| 0033 | 07/31/2020 | NOTICE OF HEARING OCT 8 @ 1:30 FILED; |
| 0034 | 08/07/2020 | DEFENDANT'S RESPONSES TO PLTF'S NOTICE OF DEPOSITION PURSUANT |
| 0035 | | TO RULE 30(B)(7)AND RULE 34 REQUEST FOR PRODUCTION,CERTIFICATE |
| 0036 | | OF SERVICE,CERTIFICATE OF SERVICE FILED; |
| 0037 | 08/10/2020 | PLTF'S NOTICE OF DEPOSITION OF DEF.BARNETT OUTDOORS,LLC,PURSUANT |
| 0038 | | TO RULE 30(B)(7)AND RULE 34 REQUEST FOR DOCUMENTS,CERTIFICATE OF |
| 0039 | | SERVICE FILED; |
| 0040 | 08/25/2020 | NOTICES OF DEPOSITION OF CHAD SCYPHERS,BRIAN MABE,AND JESSE |
| 0041 | | MCCARTHY.CERTIFICATE OF SERVICE FILED; |
| 0042 | 08/25/2020 | ORDER ENTERED; |
| 0043 | 09/08/2020 | PLTF TROY JARRELL'S RESPONSES TO DEFENDANT MOUNTAIN HERITAGE |
| 0044 | | OUTDOORS,INC.'S FIRST SET OF REQUESTS FOR ADMISSIONS,CERT.OF |
| 0045 | | SERVICE FILED; |
| 0046 | 09/28/2020 | CERTIFICATE OF SERVICE FILED; |
| 0047 | 10/05/2020 | PLTF'S SUPPLEMENTAL RESPONSE MOTION TO DISMISS FOR FAILURE TO |
| 0048 | | STATE A CLAIM,CERTIFICATE OF SERVICE FILED; |
| 0049 | 10/07/2020 | DEF'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS,CERT.OF |
| 0050 | | SERVICE FILED; |
| 0051 | 10/19/2020 | DEFENDANT MOUNTAIN HERITAGE OUTDOORS SUPPLEMENTAL BRIEF IN |
| 0052 | | SUPPORT OF ITS MOTION TO DISMISS,CERTIFICATE OF SERVICE FILED; |
| 0053 | 10/19/2020 | PLTF'S RESPONSE TO DEFENDANT'S REPLY BRIEF AND MEMORANDUM IN |
| 0054 | | SUPPORT OF AN EXTENSION OF DISCOVERY,CERT.OF SERVICE FILED; |
| 0055 | 01/07/2021 | ORDER ENTERED; CLOSED |
| 0056 | | |

These materials have been prepared by the Office of the Clerk of the various Circuit Courts from original sources and data believed to be reliable. The information contained herein, however, has not been independently verified by the Office of the Clerk or Software Computer Group, Incorporated. The Office of the Clerk of the Circuit Courts and Software Computer Group, Inc. assume no liability for the accuracy, completeness, or timeliness of the information contained herein.

Software Computer Group | PO Box 27 | Fraziers Bottom WV 25082

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305

USPS CERTIFIED MAIL™



9214 8901 1251 3410 0002 6470 15

MOUNTAIN HERITAGE OUTDOORS, INC.
BRIAN MABE, NOTICE OF PROCESS AGENT
607 ATHENS ROAD
PRINCETON, WV 24740



**Mac Warner**
Secretary of State
State of West Virginia
**Phone:** 304-558-6000
886-767-8683
**Visit us online:**
www.wvsos.com

Control Number: 251463

Defendant: MOUNTAIN HERITAGE OUTDOORS,
INC.
607 ATHENS ROAD
PRINCETON, WV 24740 US

Agent: BRIAN MABE, NOTICE OF
PROCESS AGENT

County: Mingo

Civil Action: 19-C-158

Certified Number: 92148901125134100002647015

Service Date: 1/10/2020

I am enclosing:

**1 summons and complaint**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted
service of process in the name and on behalf of your corporation.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of
process in the name and on behalf of your corporation as your attorney-in-fact. Please address any questions about this
document directly to the court or the plaintiff's attorney, shown in the enclosed paper, **not to the Secretary of State's office.***

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State

**EXHIBIT**

C

IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

TROY JARRELL, JR., and KIMBERLY JARRELL,

    Plaintiffs,

v.                                 Civil Action No. 19-C-158

BARNETT OUTDOORS, LLC, a Florida corporation,
a/k/a BARNETT OUTDOORS, INC., and BARNETT CROSSBOWS,
PLANO SYNERGY HOLDING INC., a Delaware Corporation,
and MOUNTAIN HERITAGE OUTDOORS, INC.,
a/k/a MOUNTAIN HERITAGE OUTDOORS & TAXIDERMY
and PINE MOUNTAIN ARCHERY,

    Defendants.

## SUMMONS

TO THE ABOVE NAMED DEFENDANT:    MOUNTAIN HERITAGE OUTDOORS, INC.,
a/k/a/ MOUNTAIN HERITAGE OUTDOORS
& TAXIDERMY and
PINE MOUNTAIN ARCHERY
c/o Brian Mabe, Notice of Process Agent
607 Athens Road
Princeton, West Virginia 24740

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon Plaintiff's attorney, Mark H. Mitchell, whose address is 30 East Second Avenue, Williamson, West Virginia 25661, an answer, including any related counterclaim you may have, to the complaint filed against you in the above-styled civil action. A true copy of the complaint is herewith delivered to you.

You are required to serve your answer within thirty (30) days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled civil action.

DATED: Oct 29, 2019

                                      Clerk of Court

<u>IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA</u>

TROY JARRELL, JR., and KIMBERLY JARRELL,

     Plaintiffs,

v.                                                    Civil Action No. 19-C-158

BARNETT OUTDOORS, LLC, a Florida corporation,
a/k/a BARNETT OUTDOORS, INC., and BARNETT CROSSBOWS,
PLANO SYNERGY HOLDING INC., a Delaware Corporation,
and MOUNTAIN HERITAGE OUTDOORS, INC.,
a/k/a MOUNTAIN HERITAGE OUTDOORS & TAXIDERMY
and PINE MOUNTAIN ARCHERY,

     Defendants.

<u>COMPLAINT</u>

     NOW COME Plaintiffs Troy Jarrell, Jr., and Kimberly Jarrell and, for this cause of action, allege the following:

1.    That this Complaint includes allegations of negligence, strict liability, breach of warranty, violation of the West Virginia Consumer Credit and Protection Act, and product liability claims against the Defendants; and, seeks to collect a monetary judgment against the Defendants, jointly and severally, for the personal injury and related claims of Plaintiffs.

2.    That Plaintiffs Troy Jarrell, Jr., and Kimberly Jarrell were and are currently residents of Delbarton, Mingo County, West Virginia.

3.    That on 31 October 2017, Plaintiff Troy Jarrell, Jr., was deer hunting with a Camo Barnett Ghost 410 1.5-5X Scope Crossbow in Ragland, Mingo County, West Virginia. The crossbow is capable, but should not be, of capturing the string without the anti-dry fire mechanism engaging. In that condition, even without an arrow inserted, the crossbow will unexpectedly fire. The crossbow discharged when it should not have and caused severe injuries to the hand and person of Plaintiff Troy Jarrell, Jr.

4.    The Defendants owed the Plaintiffs a duty to design, manufacture and sell a safe and non-defective crossbow and the Defendants negligently breached that duty, proximately causing the Plaintiffs' injuries and subjecting the Defendants to liability for negligence.

5.    The crossbow the Defendants put into commerce was not reasonably safe for its intended use, was defective, and unreasonably dangerous to the user by virtue of a defective design and/or

Page 1 of 4

a manufacturing defect for which the Defendants are strictly liable.

6.      The crossbow was defective and not reasonably safe for its intended use due to absent and inadequate warnings that a reasonably prudent manufacturer and seller should have included at the time the product was made and sold for which the Defendants are subject to liability for negligence and are strictly liable.

7.      At the time of the marketing and selling of the crossbow, the manufacturer and seller made express and implied promises, descriptions, and warranties regarding the crossbow that were relied upon by the Plaintiffs and part of the basis of the bargain made between the Defendants as manufacturers and sellers and the Plaintiffs as consumers, including but not limited to, an express warranty that the crossbow had a safe and fool-proof anti-dry fire mechanism and the implied warranties of merchantability and fitness for a particular purpose, all of which warranties were untrue and were breached by the Defendants.

8.      The Defendants also violated the West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-1 *et seq.*, for their unfair methods of competition and deceptive acts or practices, including, *inter alia*, representing that their goods have characteristics, uses or benefits that they do not have.

9.      The Defendants knew of the defective condition and propensity for harm of the crossbow, both prior to and after the sale of the crossbow to the Plaintiffs, and intentionally failed to warn the Plaintiffs or to recall the crossbow, for which intentional tortious conduct the Defendants are subject to liability for punitive damages.

10.     The foregoing enumerated acts of negligence and intentional conduct, each alone and collectively, proximately caused the Plaintiffs' injuries.

11.     That Defendant Barnett Outdoors, LLC, the manufacturer of the subject crossbow, was and is a Florida corporation not authorized to do business in West Virginia but is conducting business in West Virginia. Defendant Barnett Outdoors, LLC, is also known as Barnett Outdoors, Inc., and Barnett Crossbows. Its principal office address is 955 Live Oak Street, Tarpon Springs, Florida 34689. Its designated service of process agent is Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.

12.     That Plano Synergy Holding Inc. is the parent company and otherwise affiliated with and/or exercises control of Defendant Barnett Outdoors, LLC, and is a Delaware corporation not authorized to do business in West Virginia but is conducting business in West Virginia. Its principal office address is 431 E South Street, Plano, Illinois 60545. Its designated service of process agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

13.     That Defendant Mountain Heritage Outdoors, Inc., the retailer of the subject crossbow, was and is a West Virginia corporation that has been authorized to do business in the state of West Virginia since 25 January 2007. Defendant Mountain Heritage Outdoors, Inc., is also known as Mountain Heritage Outdoors & Taxidermy and Pine Mountain Archery. Its principal office address is 607 Athens Road, Princeton, West Virginia 24740. Its designated notice of process agent is Brian Mabe, 607 Athens Road, Princeton, West Virginia 24740.

14.     That Defendant Mountain Heritage Outdoors, Inc., tortiously sold the defective crossbow to Plaintiff Troy Jarrell, Jr., through its online eBay store, Pine Mountain Archery (http://www.ebaystores.com/Pine-Mountain-Archery).

15.     That the Plaintiffs allege that the actions of the Defendants were so blatantly and grossly wanton and reckless and with a complete disregard for the Plaintiffs' safety as to constitute an intent to deliberately and intentionally injure the Plaintiffs, for which the Plaintiffs are entitled to recover compensatory and punitive damages.

16.     That as a direct and proximate result of the negligence and/or intentional acts of the Defendants, Plaintiff Troy Jarrell, Jr., has sustained permanent injury and disfigurement, physical and mental pain, both in the past and in the future, medical expenses, both in the past and in the future, an impairment of his earning capacity, and a diminution of his ability to enjoy life.

17.     That as a direct and proximate result of the negligence and/or intentional acts of the Defendants, Plaintiff Kimberly Jarrell has also suffered an additional and individual wrong within her own right because she has helped care for, nurse and take care of Plaintiff Troy Jarrell, Jr., and she has been deprived of the society, consortium and support of Plaintiff Troy Jarrell, Jr.

    WHEREFORE, Plaintiffs Troy Jarrell, Jr., and Kimberly Jarrell demand the following:

1. Judgment for compensatory damages in an amount that exceeds the jurisdictional limits of this Court from each of the Defendants.
2. Judgment in favor of the Plaintiffs for punitive damages.
3. Judgment in favor of the Plaintiffs for costs and attorney fees herein expended.
4. For a trial by jury.
5. For all other proper orders and relief as the Plaintiffs may appear to be entitled.

TROY JARRELL, JR., and
KIMBERLY JARRELL,
Plaintiffs

_____
MARK H. MITCHELL
LAWYER

Page 3 of 4

IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

TROY JARRELL, JR. and
KIMBERLY JARRELL,

        Plaintiffs,

v.

BARNETT OUTDOORS, LLC, a Florida
Corporation, a/k/a BARNETT OUTDOORS,
INC., and BARNETT CROSSBOWS, PLANO
SYNERGY HOLDING INC., a Delaware
Corporation, and MOUNTAIN HERITAGE
OUTDOORS, INC., a/k/a MOUNTAIN
HERITAGE OUTDOORS & TAXIDERMY
and PINE MOUNTAIN ARCHERY,

        Defendants.

Civil Action No. 19-C-158

Judge:  Miki J. Thompson

*ADMITTED TO RECORD 2020 FEB 18 AM 9:40 MINGO COUNTY CIRCUIT CLERK*

## JOINT STIPULATION AND AGREED ORDER DISMISSING
## DEFENDANT PLANO SYNERGY HOLDING INC.

THIS DAY came the Plaintiffs Troy Jarrell, Jr. and Kimberly Jarrell ("Plaintiffs"), by undersigned counsel, together with Defendants Barnett Outdoors, LLC ("Barnett"), Plano Synergy Holding, Inc. ("Plano"), and Mountain Heritage Outdoors, Inc. ("Mountain Heritage"), by their undersigned counsel, and submit to the Court this Joint Stipulation and Agreed Order to Dismiss Defendant Synergy.

Plaintiffs stipulate to the dismissal of Defendant, Plano Synergy Holding, Inc., without prejudice.  Each party is responsible for its own attorneys' fees and costs with regard to Plaintiffs' dismissed claims.

There being no objection, and for good cause shown, the Court does hereby **ORDER** that Defendant, Plano Synergy Holding, Inc., be dismissed without prejudice from this civil action. The substitution shall be effectuated without the need to amend the case caption.


EXHIBIT
D

The Clerk is hereby **ORDERED** to transmit an attested copy of this Order to all counsel of record.

ENTERED this _18th_ day of ___February___, 2020.

Miki J. Thompson, Judge

Prepared and submitted by:

By: _____
Mark H. Mitchell, Esq. (WV #2582)
Law Offices of Mark H. Mitchell
30 East Second Avenue
Williamson, West Virginia 25661
Phone: 304-235-3902/Fax: 304-235-3903
Email: mhm@markhmitchell.com

*Counsel for Plaintiffs*

By: _____
Vaughn K. Schultz, Esq. (WV #10700)
BreiAnne Varner Redd, Esq. (WV #10894)
The Wagner Building
2001 Main Street, Suite 501
Wheeling, West Virginia 26003
Phone: 304-233-1022/Fax: 888-811-7144
E-mail: vschultz@dmclaw.com
         bredd@dmclaw.com

*Counsel for Defendants, BARNETT
OUTDOORS, LLC, PLANO SYNERGY
HOLDING INC., and MOUNTAIN
HERITAGE OUTDOORS, INC.*

A COPY TESTE

CIRCUIT CLERK, MINGO COUNTY, WV

## IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

TROY JARRELL, JR. and
KIMBERLY JARRELL,

               Plaintiffs,

v.

BARNETT OUTDOORS, LLC, a Florida
Corporation, a/k/a BARNETT OUTDOORS,
INC., and BARNETT CROSSBOWS, PLANO
SYNERGY HOLDING INC., a Delaware
Corporation, and MOUNTAIN HERITAGE
OUTDOORS. INC., a/k/a MOUNTAIN
HERITAGE OUTDOORS & TAXIDERMY
and PINE MOUNTAIN ARCHERY,

               Defendants.

Civil Action No. 19-C-158

Judge: Miki J. Thompson

### NOTICE OF HEARING

Please take notice that the undersigned will bring *Defendant Mountain Heritage Outdoors Inc.'s Motion to Dismiss* on for hearing before the Honorable Miki J. Thompson, Judge of the Circuit Court of Mingo County, West Virginia, at the Courtroom thereof in Mingo County Courthouse 78 East Second Avenue, Williamson, WV 25661, on **Thursday, April 30, 2020, at 1:30 p.m.** or as soon thereafter as counsel can be heard or at such other time as the Court may then appoint.

DICKIE, McCAMEY & CHILCOTE, L.C.

BY: /s/ *[signature]*

Vaughn K. Schultz, Esq. (WV#10700)
BreiAnne Varner Redd, Esq. (WV #10894)
The Wagner Building
2001 Main Street, Suite 501
Wheeling, WV 26003
Phone: 304-233-1022/Fax: 888-811-7144
E-mail: vschultz@dmclaw.com
        bredd@dmclaw.com

Attorneys for Defendants, *BARNETT OUTDOORS, LLC and MOUNTAIN HERITAGE OUTDOORS, INC.*





IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

TROY JARRELL, JR. and
KIMBERLY JARRELL,

        Plaintiffs,

v.

BARNETT OUTDOORS, LLC, a Florida
Corporation, a/k/a BARNETT OUTDOORS,
INC., and BARNETT CROSSBOWS, PLANO
SYNERGY HOLDING INC., a Delaware
Corporation, and MOUNTAIN HERITAGE
OUTDOORS, INC., a/k/a MOUNTAIN
HERITAGE OUTDOORS & TAXIDERMY
and PINE MOUNTAIN ARCHERY,

        Defendants.

Civil Action No. 19-C-158

Judge: Miki J. Thompson

## CERTIFICATE OF SERVICE

I hereby affirm that a true and exact copy of the foregoing *NOTICE OF HEARING* was forwarded to the following counsel of record via First Class U. S. Mail, postage prepaid, on the 26th day of February 2020:

Mark H. Mitchell (WV #2582)
Law Offices of Mark H. Mitchell
31 East Second Avenue
Williamson, West Virginia 25661
*Counsel for Plaintiffs*

DICKIE, McCAMEY & CHILCOTE, L.C.

BY: _____
Vaughn K. Schultz, Esq. (WV#10700)
BreiAnne Varner Redd, Esq. (WV #10894)
The Wagner Building
2001 Main Street, Suite 501
Wheeling, WV  26003
Phone: 304-233-1022/Fax: 888-811-7144
E-mail: vschultz@dmclaw.com
       bredd@dmclaw.com

Attorneys for Defendants, *BARNETT OUTDOORS, LLC and MOUNTAIN HERITAGE OUTDOORS, INC.*

2

IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

TROY JARRELL, Jr.,
& KIMBERLY JARRELL,

   Plaintiff(s),

v.           Civil Action No. 17-C-179  ~~WRONG~~ case #

BARNETT OUTDOORS, LLC.,     case # 19-C-158
PLANO SYNERGY HOLDING INC.,
& MOUNTAIN HERITAGE OUTDOORS, INC.
a/k/a MOUNTAIN HERITAGE OUTDOORS &
TAXIDERMY and PINE MOUNTAIN ARCHERY,

   Defendant(s).

## ORDER CONTINUING AND RESCHEDULING HEARING

   This matter is currently scheduled for Motion on Defendant, Mountain Heritages Outdoors Inc.'s Motion to Dismiss on April 30, 2020; however, based upon the ongoing nature of the COVID-19 crisis, Administrative Orders of the Supreme Court of West Virginia entered March 22, 2020 and April 3, 2020, Administrative Order of the Supreme Court of Appeals of West Virginia, entered March 22, 2020, the hearing shall be rescheduled to <u>May 26, 2020</u> at the hour of <u>1:30 p.m.</u>

   The Clerk is directed to provide copies of this order to all counsel of record and to any *pro se* parties.

   Entered this 16 day of April, 2020.

                _____
                Hon. Miki Thompson
                Circuit Judge, 30th Judicial Circuit

## A COPY TESTE

CIRCUIT CLERK, MINGO COUNTY, WV



EXHIBIT

F

**IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA**

TROY JARRELL, JR. and
KIMBERLY JARRELL,

           Plaintiffs,

v.

BARNETT OUTDOORS, LLC, a Florida
Corporation, a/k/a BARNETT OUTDOORS,
INC., and BARNETT CROSSBOWS, PLANO
SYNERGY HOLDING INC., a Delaware
Corporation, and MOUNTAIN HERITAGE
OUTDOORS, INC., a/k/a MOUNTAIN
HERITAGE OUTDOORS & TAXIDERMY
and PINE MOUNTAIN ARCHERY,

           Defendants.

Civil Action No. 19-C-158

Judge:  Miki J. Thompson

**<u>AMENDED NOTICE OF HEARING</u>**

      Please take notice that the undersigned will bring *Defendant Mountain Heritage Outdoors*

*Inc.'s Motion to Dismiss* on for hearing before the Honorable Miki J. Thompson, Judge of the Circuit

Court of Mingo County, West Virginia, **<u>via ZOOM meeting</u>**, on **Tuesday, July 14, 2020, at 2:30**

**p.m.** or as soon thereafter as counsel can be heard or at such other time as the Court may then appoint.

              DICKIE, McCAMEY & CHILCOTE, L.C.

              BY: _____

                 Vaughn K. Schultz, Esq. (WV#10700)
                 BreiAnne Varner Redd, Esq. (WV #10894)
                 The Wagner Building
                 2001 Main Street, Suite 501
                 Wheeling, WV  26003
                 Phone: 304-233-1022/Fax: 888-811-7144
                 E-mail:  vschultz@dmclaw.com
                             bredd@dmclaw.com

              Attorneys for Defendants, *BARNETT OUTDOORS,*
              *LLC and MOUNTAIN HERITAGE OUTDOORS, INC.*



EXHIBIT

G

**IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA**

TROY JARRELL, JR. and
KIMBERLY JARRELL,

               Plaintiffs,

v.

BARNETT OUTDOORS, LLC, a Florida
Corporation, a/k/a BARNETT OUTDOORS,
INC., and BARNETT CROSSBOWS, PLANO
SYNERGY HOLDING INC., a Delaware
Corporation, and MOUNTAIN HERITAGE
OUTDOORS, INC., a/k/a MOUNTAIN
HERITAGE OUTDOORS & TAXIDERMY
and PINE MOUNTAIN ARCHERY,

               Defendants.

Civil Action No. 19-C-158

Judge: Miki J. Thompson

## CERTIFICATE OF SERVICE

I hereby affirm that a true and exact copy of the foregoing *AMENDED NOTICE OF HEARING* was forwarded to the following counsel of record via U.S. Mail, postage prepaid, on the 2nd day of July 2020:

Mark H. Mitchell, Esq. (WV #2582)
Law Offices of Mark H. Mitchell
31 East Second Avenue
Williamson, West Virginia 25661
*Counsel for Plaintiffs*

DICKIE, McCAMEY & CHILCOTE, L.C.

BY: _____
Vaughn K. Schultz, Esq. (WV#10700)
BreiAnne Varner Redd, Esq. (WV #10894)
The Wagner Building
2001 Main Street, Suite 501
Wheeling, WV  26003
Phone: 304-233-1022/Fax: 888-811-7144
E-mail:  vschultz@dmclaw.com
         bredd@dmclaw.com

Attorneys for Defendants, *BARNETT OUTDOORS, LLC and MOUNTAIN HERITAGE OUTDOORS, INC.*

2

## IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

**TROY JARRELL, JR., and**
**KIMBERLY JARRELL,**

        **Plaintiffs,**

**v.**                                               **Civil Action No. 19-C-158**

**BARNETT OUTDOORS, LLC, a Florida Corporation,**
**a/k/a BARNETT CROSSBOWS, PLANO SYNERGY**
**HOLDING INC., a Delaware Corporation, and**
**MOUNTAIN HERITAGE OUTDOORS, INC.,**
**a/k/a MOUNTAIN HERITAGE OUTDOORS &**
**TAXIDERMY and PINE MOUNTAIN ARCHERY,**

        **Defendants.**

### PLAINTIFFS' RESPONSE TO DEFENDANT MOUNTAIN HERITAGE OUTDOORS, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

      **NOW COME** the Plaintiffs, **TROY JARRELL, JR.,** and **KIMBERLY JARRELL,** by counsel, Mark H. Mitchell and Robert W. Absten, and respond to Defendant "Mountain Heritage Outdoors, Inc.'s Motion to Dismiss for Failure to State a Claim." For the reasons that follow, the Motion should be denied.

### I. BACKGROUND OF THE CASE

      On 11 September 2017, Defendant Mountain Heritage Outdoors, Inc., sold a new Camo Barnett Ghost 410 1.5-5X Scope Crossbow to Plaintiffs from its eBay site entitled pine-mountain-archery (http://www.ebaystores.com/Pine-Mountain-Archery). Thereafter, on 31 October 2017, Plaintiff Troy Jarrell was injured when the crossbow malfunctioned; specifically, the crossbow unexpectedly fired before an arrow was fully loaded. This is known as a "dry fire." The crossbow is marketed and sold with a safety or "anti-dry fire" mechanism; a mechanism that should prevent the subject scenario from occurring and the resultant injuries and damages of Plaintiffs'.

1



On 29 October 2019, Plaintiffs filed a Complaint against Barnett Outdoors, LLC, a/k/a Barnett Crossbows, Plano Synergy Holding Inc., and Mountain Heritage Outdoors, Inc., alleging negligence, strict liability, breach of warranty, violation of the West Virginia Consumer Credit and Protection Act, and product liability claims against each of the named Defendants, jointly and severally, for the personal injuries and related claims of Plaintiffs.

Subsequently, on 29 January 2020, Defendant Mountain Heritage Outdoors, Inc., ("MHO" or "Mountain Heritage") filed the instant Motion to Dismiss (hereinafter "Motion") pursuant to W.V.R.C.P. 12(b)(6), failure to state a claim upon which relief can be granted.   As the basis for the Motion, Defendant relies on the "innocent seller" statute, W.Va. Code §55-7-31(b), and asserts that "Plaintiffs' sole allegation against Mountain Heritage is that it was the retailer for the subject crossbow."(Motion ¶1). MHO further states that "(p)laintiffs have not pled, nor can they establish any of the limited exceptions to avoid the protections of the innocent seller statute." (Motion ¶3).

Plaintiffs refute Defendant Mountain Heritage's position and will demonstrate that the Complaint did, in fact, state a claim(s) upon which relief can be granted and specifically pled one or more exception(s) identified under the statute at issue, W.Va. Code §55-7-31(b). As demonstrated below, Defendant's position is wholly without merit and its Motion to Dismiss should be denied.

## II. THE STANDARD OF REVIEW

The Motion before this Court is brought under W.V.R.C.P. 12(b)(6), which provides the defense of failure to state a claim may be brought by motion.   The purpose of a motion under this rule is to test the formal sufficiency of the complaint. *Collia v. McJunkin,* 178 W.Va. 158, 358 S.E.2d 242, (1987).   However, these motions are "viewed with disfavor, particularly in actions to recover for personal injuries." *Chapman v. Kane Transfer Co.,* 160 W.Va. 530, 236 S.E.2d 207,

(1977).  In fact, "the trial court, in appraising the sufficiency of a complaint on a motion under subdivision (b)(6), should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove **no set of facts** in support of his claim which would entitle him to relief. *Chapman v. Kane Transfer Co.,* 160 W.Va. 530, 236 S.E.2d 207, (1977)*(Emphasis added).*

When ruling on a motion to dismiss, Courts construe the complaint "in the light most favorable to plaintiff, and its allegations are to be taken as true." *Forshey v. Jackson,* 222 W.Va. 743, 749, 671 S.E.2d 748, 754 (2008).   Thus, the Court need only to properly consider the simple factual allegations pled in Plaintiffs' Complaint to properly deny the instant Motion.

### III. ARGUMENT

Plaintiffs filed their Complaint against the named Defendants – Barnett Outdoors, LLC, Plano Synergy Holding Inc., and Mountain Heritage Outdoors, Inc. – "alleging negligence, strict liability, breach of warranty, violation of the West Virginia Consumer Credit and Protection Act, and product liability claims against the Defendants; and, seeks to collect a monetary judgment against the Defendants, jointly and severally, for the personal injury and related claims of Plaintiff."(Complaint ¶1).   On its face, the Plaintiffs' complaint has made each and every allegation against each of the Defendants, including Defendant Mountain Heritage Outdoors, Inc.

Defendant Mountain Heritage relies on the so-called "innocent seller" statute, W.Va. Code §55-7-31, arguing that Plaintiffs' complaint should be dismissed for failure to state a claim. Defendant identifies the statute and correctly states that there are limited exceptions to bar a Plaintiff from bringing a products liability claim against a seller.   However, Defendant's argument conveniently omits the very first of the limited exceptions, W.Va. Code §55-7-31(b)(1), as follows:

3

(1) The seller had actual **knowledge of the defect** in the product that was a proximate

cause of the harm for which recovery is sought. (*Emphasis added.*)

Defendant further neglects that Plaintiffs' ***complaint has plead this very exception,*** see

complaint, paragraph 9, to wit:

"9. **The Defendants knew of the defective condition** and propensity for harm of the

crossbow, **both prior to and after the sale** of the crossbow to the Plaintiffs . . ."

(*Emphasis added.*)

Therefore, Plaintiffs' complaint easily passes the formal sufficiency test required by Rule

12(b)(6), as it clearly states a set of facts that entitle the Plaintiffs to relief.   The complaint, one for

personal injuries and at a higher standard for dismissal, specifically states at least one of the

limited exceptions to the statute, *inter alia*, that the seller had knowledge of the defect.

As the Defendant admits, there is scant authority interpreting the statute upon which they

rely.   In the primary case to date, *McNair v. Johnson & Johnson*, 241 W.Va. 26, 40, 818 S.E.2d

852, 866 (2018), the West Virginia Supreme Court of Appeals recognized the statute "as well as

our precedent, evince a clear public policy in West Virginia to limit the scope of products liability

actions to manufacturers and, while now statutorily limited, to sellers."   The *McNair* Court did

not, however, state that the statute created a "get out of jail free card" for sellers.   In fact, it did the

exact opposite vis-a-vis retailers, clarifying its long-standing precedent while "[restricting]

products liability to the manufacturer and **seller** of the allegedly injury-causing product."

*McNair*, 241 W.Va. 26, 40, 818 S.E.2d 852, 866 (2018)(*Emphasis added*).

The purpose of the statute at issue, W.Va. Code §55-7-31, is to alter, by legislation, the

common law of product liability in West Virginia, as set forth in *Moringstar v. Black and Decker

Mfg. Co.,* 162 W.Va. 857, 253 S.E.2d 666 (1979) and its progeny. Under that regime, **any party**

4

who may have owned, altered, or even had any significant contact with the defective product at issue could be potentially liable to a plaintiff. This could lead to potentially unfair outcomes, as parties who had only minimal contact or knowledge of the product could be held responsible (The classic law school presentation of this concept was "a person receives an item as a wedding gift, never opens it, and later sells it in a garage sale. Is she potentially liable? Yes!"). That, and similar scenarios, are the so-called "innocent sellers" and it is those types of transactions contemplated as being protected by the statute. The Legislature intended to provide a shield for the truly "innocent seller". It did not, however, show any intention of eliminating strict liability or general product liability from **all** retailers. *McNair*, 241 W.Va. 26, 818 S.E.2d 852 (2018). In this matter, Defendant MHO, is a retailer of specialized outdoor products and regularly trades in potentially dangerous equipment, such as the crossbow at issue in this case. It has, or should have had, greater knowledge of the products it sells than the consuming public, including potential defects. A customer, Mr. Jarrell, should be able to reasonably rely on the retailer's representations that the product is fit for its intended use. In this case the product was not: it failed and injury occurred. Mountain Heritage is not an "innocent seller" by any possible definition of the term, should remain in this action, and the instant Motion denied.

IV. CONCLUSION

Plaintiffs have not only plead a set of facts that could entitle them to relief against each of the named Defendants, but have also specifically plead at least one of the statutory exceptions enumerated in West Virginia Code 55-7-31(b), thus invoking the statutory exception and authorizing valid claims against the Defendant Mountain Heritage Outdoors, Inc. Accordingly, the Plaintiffs respectfully requests that this Honorable Court enter an Order denying the Defendant

5

Mountain Heritage Outdoors, Inc.'s Motion to Dismiss, and all other such relief as this Court sees just.

TROY JARRELL, JR., and
KIMBERLY JARRELL,
Plaintiffs, by:


ROBERT W. ABSTEN
PLAINTIFFS' LAWYER

**ROBERT W. ABSTEN**
**PLAINTIFFS' LAWYER**
**West Virginia State Bar No. 9818**
**Co-Counsel for Plaintiffs**
**30 East Second Avenue, Suite 2**
**Williamson, West Virginia 25661**
**Telephone:   (304) 610-6129**
**Facsimile:   (304) 235-3903**
**Email:   robert.absten@gmail.com**


**MARK H. MITCHELL**
**PLAINTIFFS' LAWYER**
**West Virginia State Bar #2582**
**Co-Counsel for Plaintiffs**
**30 East Second Avenue**
**Williamson, West Virginia   25661**
**Telephone:   (304) 235-3902**
**Facsimile:   (304) 235-3903**
**E-mail:   mhm@markhmitchell.com**

6

## IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

**TROY JARRELL, JR., and
KIMBERLY JARRELL,**

**Plaintiffs,**

v.                                                                    Civil Action No. 19-C-158

**BARNETT OUTDOORS, LLC, a Florida Corporation,
a/k/a BARNETT CROSSBOWS, PLANO SYNERGY
HOLDING INC, a Delaware Corporation, and
MOUNTAIN HERITAGE OUTDOORS, INC.,
a/k/a MOUNTAIN HERITAGE OUTDOORS &
TAXIDERMY and PINE MOUNTAIN ARCHERY,**

**Defendants.**

### ORDER

On the 14th day of July, 2020, came the plaintiffs, by undersigned counsel, Mark H. Mitchell,

Esquire and Robert W. Absten, Esquire, and as well came the defendants, by undersigned counsel,

BreiAnne Varner Redd, Esquire, Dickie, McCamey & Chilcote, L.C. and Christopher T. Sheean,

Esquire, admitted *pro hac vice*, for a hearing on Defendant Mountain Heritage Outdoors, Inc.'s

Motion to Dismiss.

Whereupon, the Court heard oral argument and considered the issues, motions, responses,

matters of record and applicable law. In consideration thereof, the Court has determined plaintiffs

are granted the opportunity to conduct discovery to determine whether Defendant Mountain Heritage

Outdoors had actual knowledge of a defect in the subject product, as alleged by plaintiffs.

Accordingly, the ruling on the Motion to Dismiss is hereby **HELD IN ABEYANCE** and **STAYED**.

Further hearing on the pending Motion to Dismiss shall be conducted on the **8th day of**

**October, 2020 at 1:30 p.m.**

All of which is accordingly, **ORDERED.**

The Clerk is directed to transmit a copy of this Order to all counsel of record herein.



ENTERED this 25th day of August_____, 2020.

_____
The Honorable, Miki J. Thompson, Judge

Prepared and submitted by:

_____
Vaughn K. Schultz, Esq. (WV#10700)
BreiAnne Varner Redd, Esq. (WV#10894)
DICKIE, McCAMEY & CHILCOTE, L.C.
The Wagner Building
2001 Main Street, Suite 501
Wheeling, WV 26003
Phone: 304-233-1022/Fax: 888-811-7144
E-mail: vschultz@dmclaw.com
        bredd@dmclaw.com
and

Christopher T. Sheean, Esq. (IL#6210018)
(*admitted pro hac vice*)
Swanson, Martin & Bell, LLP
330 N. Wabash Ave., Suite 3300
Chicago, IL 60611
Phone: (312) 222-8559
Fax: (312) 321-0990
Email: csheean@smbtrials.com

Attorneys for Defendants, *BARNETT OUTDOORS, LLC*
and *MOUNTAIN HERITAGE OUTDOORS, INC.*

A COPY TESTE

_____
CIRCUIT CLERK, MINGO COUNTY, WV

2

| | |
|---|---|
| **From:** | Chandler, Matthew <Matthew.Chandler@courtswv.gov> |
| **Sent:** | Thursday, October 8, 2020 10:05 AM |
| **To:** | Schultz, Vaughn; Redd, BreiAnne Varner; mhm@markhmitchell.com; Christopher Sheean; robert.absten@gmail.com |
| **Subject:** | Troy Jarrell v. Barnett Outdoors (19-C-158) Motion for Summary Judgment |

Please be advised that Judge Thompson has reviewed the Motion, briefs and supplemental memoranda and has decided to make a ruling based on the prior hearing and the written argument of counsel.  Therefore, the hearing set for October 8, 2020 at 1:45 is no longer needed.

Judge Thompson  intends to publish a ruling within approximately 10 days on the above Motion and has granted leave for any party to submit further evidence in support of their respective position until such time.

Should you have any questions, please do not hesitate to contact me.

Thanks.
Matt.

*Matthew E. Chandler, Esq.*
Law Clerk
30th Judicial Circuit
78 W 2nd Ave.
Williamson, WV 25661
(304) 235-0340 (office)
(304) 235-0342 (fax)





1

**From:** Chandler, Matthew <Matthew.Chandler@courtswv.gov>
**Sent:** Tuesday, November 24, 2020 9:13 AM
**To:** Christopher Sheean
**Cc:** mhm@markhmitchell.com; robert.absten@gmail.com; Redd, BreiAnne Varner; Schultz, Vaughn; Marnie Sy
**Subject:** RE: Troy Jarrell v. Barnett Outdoors (19-C-158) Motion for Summary Judgment

The Judge is still reviewing the briefs and will be publishing a ruling very soon.
We apologize for the delay as we have been rendered to a skeleton crew with various offices in the courthouse being affected by positive COVID-19 results.

Thank you and sorry for the inconvenience.

Matt.

**From:** Christopher Sheean <csheean@smbtrials.com>
**Sent:** Monday, November 23, 2020 1:00 PM
**To:** Chandler, Matthew <Matthew.Chandler@courtswv.gov>
**Cc:** mhm@markhmitchell.com; robert.absten@gmail.com; Redd, BreiAnne Varner <bredd@dmclaw.com>; Schultz, Vaughn <VSchultz@dmclaw.com>; Marnie Sy <msy@smbtrials.com>
**Subject:** RE: Troy Jarrell v. Barnett Outdoors (19-C-158) Motion for Summary Judgment

Mr. Chandler,

I hope that you, Judge Thompson, and the rest of the staff are well.  I am following up on the below matter to inquire regarding the ruling.  I have not seen an email, and wondered if the Court had issued a ruling that I somehow missed.

Thank you in advance for any information that you can provide.

Regards,

Christopher T. Sheean
Swanson, Martin & Bell LLP
330 N. Wabash Ave.
Suite 3300
Chicago, Illinois 60611
T: (312) 222-8559
F: (312) 321-0990
csheean@smbtrials.com

**From:** Chandler, Matthew <Matthew.Chandler@courtswv.gov>
**Sent:** Thursday, October 8, 2020 10:05 AM
**To:** Schultz, Vaughn <VSchultz@dmclaw.com>; Redd, BreiAnne Varner <bredd@dmclaw.com>; mhm@markhmitchell.com; Christopher Sheean <csheean@smbtrials.com>; robert.absten@gmail.com
**Subject:** Troy Jarrell v. Barnett Outdoors (19-C-158) Motion for Summary Judgment

1



EXHIBIT
K

Please be advised that Judge Thompson has reviewed the Motion, briefs and supplemental memoranda and has decided to make a ruling based on the prior hearing and the written argument of counsel.  Therefore, the hearing set for October 8, 2020 at 1:45 is no longer needed.

Judge Thompson  intends to publish a ruling within approximately 10 days on the above Motion and has granted leave for any party to submit further evidence in support of their respective position until such time.

Should you have any questions, please do not hesitate to contact me.

Thanks.
Matt.

*Matthew E. Chandler, Esq.*
Law Clerk
30th Judicial Circuit
78 W 2nd Ave.
Williamson, WV 25661
(304) 235-0340 (office)
(304) 235-0342 (fax)



**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

**TROY JARRELL, JR., and**
**KIMBERLY JARRELL,**

        Plaintiffs,

v.                                  **Civil Action No. 19-C-158**

**BARNETT OUTDOORS, LLC, a Florida Corporation,**
**a/k/a BARNETT CROSSBOWS,**
**MOUNTAIN HERITAGE OUTDOORS, INC.,**
**a/k/a MOUNTAIN HERITAGE OUTDOORS &**
**TAXIDERMY and PINE MOUNTAIN ARCHERY,**

        Defendants.

ADMITTED TO RECORD
2021 JAN -7 PM 3:18
MINGO COUNTY CIRCUIT CLERK

## ORDER

    ON A PREVIOUS DAY came the defendant Mountain Heritage Outdoors, Inc. a/k/a Mountain Heritage Outdoors & Taxidermy and Pine Mountain Archery, by its undersigned counsel, BreiAnne Varner Redd, Esquire, Dickie, McCamey & Chilcote, L.C. and Christopher T. Sheean, Esquire, admitted *pro hac vice*, and filed Defendant Mountain Heritage Outdoors, Inc.'s Motion to Dismiss For Failure to State a Claim. The Court reviewed and considered *Defendant Mountain Heritage Outdoors, Inc.'s Motion to Dismiss and Memorandum of Law In Support of Motion to Dismiss, Plaintiffs' Response to Defendant Mountain Heritage Outdoors, Inc.'s Motion to Dismiss for Failure to State a Claim, Plaintiffs' Supplemental Response to Defendant Mountain Heritage Outdoors, Inc.'s Motion to Dismiss for Failure to State a Claim, Defendant Mountain Heritage Outdoors, Inc.'s Reply Brief in Support of Its Motion to Dismiss, Plaintiffs' Response to Mountain Heritage Outdoors, Inc.'s Reply Brief,* and *Defendant Mountain Heritage Outdoors, Inc.'s Supplemental Reply Brief in Support of Its Motion to Dismiss.* Whereupon, the Court heard oral argument and considered the issues, arguments, matters of record and applicable law. In consideration thereof, the Court has determined as follows:

1



EXHIBIT
L

## FINDINGS OF FACT

1.      Plaintiffs filed their Complaint against Defendants Barnett Outdoors, LLC ("Barnett"), Plano Synergy Holdings, Inc. and Mountain Heritage Outdoors, Inc. ("MHO").

2.      The Complaint alleges that Barnett manufactured and MHO sold to Plaintiff Troy Jarrell a Barnett Ghost 410 Crossbow that was defective and caused Plaintiffs personal injuries. (Complaint at ¶¶ 3-8).

3.      The Complaint also alleges that Defendants knew of the defective condition and propensity for harm of the crossbow both prior to and after the sale of the crossbow. (Complaint at ¶ 9).

4.      Defendant MHO was served with the Complaint on January 10, 2020, and Defendant Barnett was served with the Complaint on January 21, 2020.

5.      Defendant MHO filed a Motion to Dismiss for Failure to State a Claim on February 3, 2020, asserting that Plaintiffs' claims against it should be dismissed based on West Virginia's Innocent Seller Statute, West Virginia Code §55-7-31(b).

6.      Plaintiffs filed a response to the motion to dismiss on July 10, 2020, and asserted that they had alleged knowledge of the defect in Paragraph 9 of the Complaint, claiming that the allegation met an exception to the statute.

7.      Defendant MHO responded that the statute requires "actual knowledge," and that Plaintiffs had not alleged actual knowledge, and were unable to do so.

8.      Following a hearing on July 14, 2020, this Court granted Plaintiffs 60 days to conduct discovery to demonstrate evidence that MHO had actual knowledge of a defect in the subject crossbow. (August 25, 2020 Order).

9.      The parties exchanged written discovery, and Plaintiffs deposed two witnesses from MHO, and presented its evidence and arguments in opposition to the motion to dismiss.

10.     Plaintiffs failed to provide any evidence that MHO had ever heard of anyone suffering an injury of any kind with a Barnett crossbow, let alone anyone suffering an injury with the same model crossbow, a Ghost 410 crossbow, in a manner similar to Mr. Jarrell's injury.

11.     The MHO employee's testimony relied upon by Plaintiffs, Chad Scyphers, testified that he had never seen a defective anti-dry fire trigger on a Barnett crossbow (Deposition of Chad Scyphers, pp. 69-70).

12.     Mr. Scyphers also testified that he had never heard of or read about anyone claiming to have cocked a crossbow, but failing to engage the safety. (Deposition of Chad Scyphers, p. 83).

13.     Mr. Scyphers testified that he could not say whether the subject crossbow was defective. (Deposition of Chad Scyphers at p. 88).

14.     Plaintiffs failed to provide any evidence that MHO had any knowledge of a Barnett crossbow releasing its string without the user pulling the trigger, or of any other defect.

## CONCLUSIONS OF LAW

This Court, therefore, concludes as a matter of law, the following:

1.     Plaintiffs and Defendants presented material outside the original pleading, which this Court permitted under Rule 12(b) of the W.Va. Rules of Civil Procedure, and the Court considered Defendant Mountain Heritage Outdoors, Inc.'s Motion to Dismiss as a Rule 56 Motion for Summary Judgment under the W. Va. Rules of Civil Procedure.

2.     Rule 56 of the W. Va. Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." W. Va. Civ. P. 56(c).

3.     The party opposing summary judgment must do more than simply assert that there is some doubt to the facts. *See Harbaugh v. Coffinbarger*, 209 W. Va. 57, 62, 543 S.E.2d 338,

3

343 (2000) (holding, "the party opposing the summary judgment motion 'must do more than simply show that there is some metaphysical doubt as to the material facts.'") quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once the moving party has met its burden to show absence of material fact, the party opposing summary judgment then must come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. *See Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.,* 196 W. Va. 692, 699 (1996); *Gentry v. Mangum,* 195 W. Va. 512, 519 (1995).

4.      The Court considered the evidence presented by the parties in a light most favorable to the non-movants/Plaintiffs, and hereby finds that there is no genuine issue of material fact that Defendant Mountain Heritage Outdoors, LLC is an innocent seller pursuant to West Virginia Code §55-7-31(b), and had no actual knowledge of any defect in the subject crossbow at the time of the sale.

5.      The "evidence" that Plaintiffs cite in their Supplemental Response falls short of what is required for an exception under the West Virginia Innocent Seller statute. W. Va. Code, §55-7-31. The statute requires "actual knowledge of the defect," as the first exception to the immunity from liability afforded to a mere seller of a product. Actual knowledge is not defined in the statute, but its meaning can be discerned from looking at other West Virginia Statutes, and from interpretation of similar innocent seller statutes in other jurisdictions. W.Va. Code, § 23-4-2(d)(2)(ii)(B) is a workers compensation employer immunity exception known as the "deliberate intention" exception. The plaintiff must show "that the employer, prior to the injury, had <u>actual knowledge</u> of the existence of the specific unsafe working condition and of the high degree of risk and the <u>strong probability</u> of serious injury or death presented by the specific unsafe working condition." W. Va. Code, § 23-4-2(d)(2)(ii)(B)(iii)(emphasis added). One court in West Virginia defined that "actual knowledge" requirement as "subjective realization" and "appreciation" of the

specific unsafe working condition. *Skaggs v. Kroger Co.*, 788 F.Supp.2d 501, 507 n.6 (S.D.W.Va.2011) (quoting *Blevins v. Beckley Magnetite, Inc.*, 408 S.E.2d 385, 385 (W.Va.1991).

6.      Here, Plaintiffs allege no factual support for the blanket assertion that Mountain Heritage had "actual knowledge of a defect." Plaintiffs fail to identify any "knowledge" Mountain Heritage that would constitute "subjective realization and appreciation" of a specific defect in the subject crossbow. *Reich v. Genzyme Corp.*, No. 14-CV-01684-RM-MJW, 2015 WL 5842418, at *8 (D. Colo. Oct. 7, 2015) (interpreting Colorado's statute and dismissing a claim against a seller because the allegations of actual knowledge as to the seller were conclusory). Moreover, Plaintiffs' conclusory "irrefutable evidence" is not sufficient under the statute. At best, Plaintiffs' evidence constitutes "constructive knowledge," which is insufficient under the statute. *Mix v. Target Corp.*, 759 F. Supp. 2d 876, 881 (W.D. Tex. 2010)(granting summary judgment for Target and holding that "should have known", or constructive knowledge, is insufficient under Texas's innocent seller statute).

7.      In their supplemental response, Plaintiffs assert that even if this Court were to grant Mountain Heritage's Motion under the innocent seller statute, its claims for negligence, warranty and consumer protection violations would survive. Plaintiffs have directly misstated the very language of the statute. Under the West Virginia "innocent seller" statute, "product liability action" is defined as:

> Any civil action brought against a manufacturer or seller of a product, based in whole or in part on the doctrine of strict liability in tort, for or on account of personal injury, death or property damage caused by or resulting from
> (A) The manufacture, construction, design, formula, installation, preparation, assembly, testing, packaging, labeling, marketing or sale of a product;
> (B) The failure to warn or protect against a danger or hazard in the use, misuse or unintended use of a product; or
> (C) The failure to provide proper instructions for the use of a product.

W. Va. Code § 55-7-31(a)(4). Plaintiffs' suggestion that only their claim for strict liability would be barred under the statue is directly contradicted by the statute that specifically provides, "No

product liability action shall be maintained against a seller, unless: (a) the seller had actual knowledge of the defect in the product that was the proximate cause of the harm for which recovery is sought." W. Va. Code § 55-7-31 (b). The West Virginia Supreme Court of Appeals has recognized that this statute "evince[s] a clear public policy in West Virginia to limit the scope of products liability actions to manufacturers, and...statutorily limited...sellers." *McNair v. Johnson & Johnson*, 241 W. Va. 26, 40, 818 S.E.2d 852, 866 (2018).

8.      Dismissal of an action pursuant to Rule 56 is proper "*where the claim is not authorized by the laws of West Virginia*." *Harrison*, 197 W.Va. 651, 478 S.E.2d 104 (1996) (emphasis supplied).  Thus, as W. Va. Code §55-7-31(b) does not authorize Plaintiffs' claims asserted against Mountain Heritage, judgment is hereby entered in favor of Defendant Mountain Heritage Outdoors, Inc., and against Plaintiffs.

9.      Accordingly, the Motion for Summary Judgment is hereby **GRANTED**.

10.     Further, the Court finds that there is no just reason for delay of enforcement of this order, and therefore directs that judgment shall be entered in favor of Mountain Heritage Outdoors, Inc. a/k/a Mountain Heritage Outdoors & Taxidermy and Pine Mountain Archery on all counts.

**11.**     All exceptions and objections to the Court's ruling are hereby **NOTED** and **PRESERVED**.

All of which is accordingly, **ORDERED**.

The Clerk is directed to transmit a copy of this Order to all counsel of record herein.


ENTERED this _7th_ day of _January_ , 2021.

A COPY TESTE

CIRCUIT CLERK, MINGO COUNTY, WV

The Honorable, Miki J. Thompson, Judge

6

Reviewed and approved by:

Prepared and submitted by:

_____

Mark H. Mitchell, Esq. (WV #2582)
Law Offices of Mark H. Mitchell
30 East Second Avenue
Williamson, West Virginia 25661
E-mail: mhm@markhmitchell.com
*Co-counsel for Plaintiffs*

and

Robert W. Absten (WV#9818)
30 East Second Avenue
Williamson, West Virginia 25661
E-mail: robert.absten@gmail.com
*Co-counsel for Plaintiffs*

_____

Vaughn K. Schultz, Esq. (WV#10700)
BreiAnne Varner Redd, Esq. (WV #10894)
DICKIE, McCAMEY & CHILCOTE, L.C.
The Wagner Building
2001 Main Street, Suite 501
Wheeling, WV 26003
Phone: 304-233-1022/Fax: 888-811-7144
E-mail: vschultz@dmclaw.com
            bredd@dmclaw.com
and

Christopher T. Sheean, Esq. (IL#6210018)
(*admitted pro hac vice*)
Swanson, Martin & Bell, LLP
330 N. Wabash Ave., Suite 3300
Chicago, IL 60611
Phone: (312) 222-8559
Fax: (312) 321-0990
Email: csheean@smbtrials.com

Attorneys for Defendants, *BARNETT
OUTDOORS, LLC and MOUNTAIN
HERITAGE OUTDOORS, INC.*

7

## IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

**TROY JARRELL, JR., and**
**KIMBERLY JARRELL,**

      **Plaintiffs,**

**v.**                                      **Civil Action No. 19-C-158**

**BARNETT OUTDOORS, LLC, a Florida Corporation,**
**a/k/a BARNETT CROSSBOWS, PLANO SYNERGY**
**HOLDING INC., a Delaware Corporation, and**
**MOUNTAIN HERITAGE OUTDOORS, INC.,**
**a/k/a MOUNTAIN HERITAGE OUTDOORS &**
**TAXIDERMY and PINE MOUNTAIN ARCHERY,**

      **Defendants.**

## PLAINTIFFS' NOTICE OF DEPOSITION OF DEFENDANT MOUNTAIN HERITAGE OUTDOORS, INC., PURSUANT TO RULE 30(b)(7) AND RULE 34 REQUEST FOR DOCUMENTS

TO:    ABOVE NAMED DEFENDANT(S) AND THEIR ATTORNEY:

      **PLEASE TAKE NOTICE** that, pursuant to Rule 30(b)(7) of the <u>West Virginia Rules of Civil Procedure</u>, the stenographic and/or videotaped deposition of Defendant Mountain Heritage Outdoors, Inc., a/k/a Mountain Heritage Outdoors & Taxidermy and Pine Mountain Archery, (hereinafter "MHO") will be taken before a qualified Notary Public at the undersigned office of Plaintiffs' counsel beginning on August 27, 2020, at 10:00 a.m., *or at another location and/or time agreed upon by counsel*, and continue thereafter from day to day until the same be completed.

      Pursuant to Rule 30(b)(7), the aforesaid Defendant is required to designate and fully prepare one or more officers, directors, managing agents, or other persons with knowledge concerning the following designated matters, or other persons who consent to testify on its



EXHIBIT

M

behalf, and whom Defendant will fully prepare to testify regarding the following designated matters and to such information which is known or reasonably available to the organization at said deposition:

1. The existence of the documents requested below pursuant to Rule 34;

2. The electronic creation, duplication, and/or storage of the documents requested below pursuant to Rule 34;

3. Any and all document retention/destruction policies that would relate to any of the documents requested below pursuant to Rule 34;

4. The location of the documents requested below pursuant to Rule 34;

5. The organization, indexing, and/or filing of the documents requested below pursuant to Rule 34;

6. The method of search for the documents requested below pursuant to Rule 34;

7. The completeness of the documents produced pursuant to Rule 34;

8. The authenticity of the documents produced pursuant to Rule 34;

9. MHO's knowledge, if any, relating to the anti-dry fire safety mechanism and/or trigger assembly and/or nock sensor in the Barnett line of crossbows and specifically the Ghost 410;

10. MHO's knowledge, if any, relating to any safety issues or concerns with the Barnett line of crossbows and specifically the Ghost 410;

11. MHO's knowledge, if any, relating to the owners' manuals pertaining to the Barnett line of crossbows and specifically the Ghost 410;

12. The repair, replacement, and/or service work performed by MHO personnel in regard to the Barnett Ghost 410 or any other crossbow with the same anti-dry fire, safety, and/or trigger assembly;

13. The cost of the repair, replacement, and/or service work performed by MHO personnel in regard to the Barnett Ghost 410 or any other crossbow with the same anti-dry fire, safety, and/or trigger assembly and whether the customer was responsible for payment and/or whether such work was covered by Barnett's warranty or whether such work was reimbursed to MHO by Barnett;

2

14.     The agreements, contracts, and business relationship between MHO and Barnett Outdoors, LLC, a/k/a Barnett Outdoors, Inc., and Barnett Crossbows (hereinafter "Barnett");

15.     Communications between MHO and Plaintiffs;

16.     MHO's knowledge, if any, of any and all incidents, whether similar to Plaintiffs' incident or not, involving an alleged dry fire of a Barnett crossbow;

17.     MHO's knowledge, if any, of similarities in the nock sensor of the Ghost 410 and the nock sensors in Barnett's recalled crossbows;

18.     Communications between MHO and Barnett in regard to the anti-dry fire safety, trigger mechanism, and/or nock sensor of the Ghost 410 or any other crossbow with the same anti-dry fire, safety, and/or trigger mechanism;

19.     Communications between MHO and Barnett in regard to broken bow strings;

20.     The organizational chart of MHO, including specific job descriptions, educational level, and experience level required for each position in addition to the identity of the person(s) that held each position from 2012-2017;

21.     All complaints, feedback, reviews, and inquiries received from potential or actual customers relating to crossbows. This includes complaints, reviews, feedback, and inquiries maintained by the physical storefront(s), online stores (e.g., Amazon, eBay), and other websites (e.g., Google);

22.     All trade organizations, services, blogs, and message boards in which MHO agents and/or employees, specifically including its customer service representatives, engineers/technicians, and managers, are members, subscribers, and/or otherwise post comments individually and on behalf of MHO specifically;

23.     Archery, hunting, and other industry publications in which MHO is a receiver, subscriber, and/or advertiser;

24.     Archery, hunting, and other industry conventions, conferences, retreats, etc., in which MHO and/or its employees have attended;

25.     Crossbow sales figures of MHO for the time period of 2012-2017;

26.     The relative craftsmanship, durability, accuracy, and safety of Barnett crossbows versus other brands MHO offers for sale;

27.     The process of crossbow product selection among manufacturers and within product lines in regard to what products MHO offers for sale;

3

28. Any failure mode effects analysis MHO has conducted, reviewed or received relating to crossbows;

29. Claims/lawsuits alleged against MHO relating to the sales of crossbows and related equipment;

30. Any insurance policy that might provide coverage for the subject incident;

31. The practices and procedures of MHO for potential customers that inquire, whether by in-person visit, telephone or online transmission, about recommendations of or purchasing a crossbow;

32. The practice and procedures for MHO customers that inquire, whether by in-person visit, telephone or online transmission, about operational or safety concerns or issues regarding a Barnett crossbow they purchased;

33. The extent to which crossbow dry fires and/or injuries are due to equipment failure vs. user error;

34. MHO's knowledge of the extent of MHO's customers' common sense and knowledge of the safe handling of crossbows;

35. The significant differences between the various brands of crossbows offered for sale by MHO to the general public;

36. The repair and servicing offered and/or performed on crossbows generally and Barnett crossbows specifically;

37. The process, qualifications, mandates for becoming and sustaining requirements to be an authorized Barnett dealer, distributor, retailer, and/or bow technician;

38. Any repair procedure development MHO has been involved relating to crossbows;

39. The service and/or warranty return rate and/or repair rate of Barnett crossbows;

40. All communications and documents between MHO and the Barnett customer service, warranty and/or repair departments relating to crossbow operation and safety;

41. Replacement parts for the Barnett line of crossbows including, but not limited to, the trigger mechanism, anti-dry fire mechanism, safety, and/or nock sensor;

42. The operation and safety of the various anti-dry fire safety mechanisms and/or inhibiters on crossbows that MHO offers for sale;

4

43.     The amount of trigger pull required to fire a crossbow;

44.     The effect, if any, on the amount of trigger pull required to fire a Barnett Ghost 410 crossbow when the safety is between the "off" and "on" position;

45.     Recalls of crossbows sold by MHO;

46.     Information and/ or documents regarding recalls of Barnett crossbows;

47.     Communication received from and sent to the Consumer Product Safety Commission, Underwriters Laboratories and any other federal, industry or consumer protection entity relating to crossbows;

48.     Practices, protocols, policies and procedures relating to voluntary recall, buy-back programs, safety related public service announcements or component retrofit campaigns regarding crossbows sold by MHO;

49.     Warnings or notifications received from any crossbow manufacturer of the brands MHO sells or has sold relating to crossbow safety;

50.     Whether the now-recalled Barnett crossbows' anti-dry fire mechanism, trigger, sensors, etc., are different from those in the subject Ghost 410;

51.     Whether there is any circumstance whereby a Ghost 410 crossbow anti-dry fire trigger mechanism will fire without an arrow fully loaded in the trigger mechanism;

52.     Whether the Ghost 410 presents any risk or hazard of premature, unintended, unexpected, inadvertent or accidental discharge or firing;

53.     Whether there is any circumstance whereby a Ghost 410 anti-dry fire mechanism or safety can be in between the "on" and "off" position;

54.     Knowledge of crossbow operators/owners having attempted to alter or modify the safety or trigger mechanism of the Barnett Ghost 410;

55.     Whether MHO offers any warranty or guarantee other than those offered by the manufacturer;

56.     Incidents, whether or not a Workers' Compensation was brought, wherein MHO employees and/or agents were injured by a crossbow, specifically including the Barnett line of crossbows; and,

57.     The replacement parts lists, parts catalogs, parts cross-reference guides, repair manuals, schematics, specialty tools, and similar documents Barnett has provided and/or recommends to MHO relating to crossbows.

Pursuant to Rule 30(b)(7) and Rule 34 of the <u>West Virginia Rules of Civil Procedure</u>, Plaintiffs request that the aforesaid Defendant produce to Plaintiffs' counsel (and permit the copying thereof), **no less than 10 business days prior to the date of aforementioned corporate deposition**, the following documents and tangible things in the possession, custody, or reasonable control of the aforesaid Defendant, its attorneys or other representatives or agents:

### Rule 34 Schedule of Documents

1. All documents relied upon by MHO's corporate designee(s) in testifying regarding matters 1-57 above;

2. All documents and other types of communication exchanged between Barnett and MHO relating to crossbows;

3. All documents including all types of communications in regard to the process, qualifications, and mandates for becoming and sustaining requirements to be an authorized Barnett dealer, distributor, retailer and/or bow technician;

4. Documents regarding the service and/or warranty return rate and/or repair rate of Barnett crossbows;

5. Communications and documents between MHO and the Barnett customer service, warranty and/or repair departments

6. All documents in your possession discussing and/or depicting the results of any developmental or failure testing of Barnett crossbows during the period of 2012-2017;

7. All documents, communications, depictions, feedback, reviews, inquiries, and complaints reviewed or received regarding Barnett crossbows;

8. Documents, such as engineering drawings and cross-reference guides or parts catalogs, reflecting different parts or part numbers of components that were/are interchangeable with parts or components used in the Ghost 410;

9. Operational testing of the Ghost 410 or any other crossbow with the same anti-dry fire or safety mechanism, and its components;

10. Safety testing of the Ghost 410 or any other crossbow with the same anti-dry fire or safety mechanism, and its components;

6

11.   Failure analysis of the Ghost 410 or any other crossbow with the same anti-dry fire or safety mechanism, and its components;

12.   Patents and/or patent applications relating to the Ghost 410 model and its components;

13.   Advertising used in marketing the Ghost 410 model or any other crossbow with the same anti-dry fire or safety mechanism;

14.   Any public service announcements considered and/or used regarding the Ghost 410 crossbow and/or similar crossbows;

15.   Documents or communications addressing the circumstances or conditions under which an "automatic **anti-dry fire** safety" may fail to engage every time a crossbow is cocked;

16.   Documents or communications that relate to whether there are circumstances or conditions under which the safety does not have to be released before the crossbow can be fired;

17.   Documents or communications that relate to whether the **"anti-dry fire trigger mechanism"** will or will not fire without an arrow fully loaded in the trigger mechanism;

18.   Documents or communications relating to whether there are conditions or circumstances under which the safety does not have to be disengaged prior to the crossbow firing;

19.   Any and all letters, e-mails, and other communications asserting claims for personal injury or property damage alleged to result from crossbows MHO or Barnett has placed into commerce;

20.   Documents or communications that identify all claims or lawsuits alleged against MHO or Barnett that a crossbow or a component thereof was defective in any manner;

21.   Documents or communications that identify all claims or lawsuits alleged against MHO or Barnett regarding the occurrence of an unexpected, premature, inadvertent, accidental or unintended discharge of a crossbow;

22.   List of parts, maintenance, and repair records for any Ghost 410 crossbow or any other crossbow with the same anti-dry fire or safety mechanism and/or nock sensor;

23.   All invoices, repair orders, and other documents pertaining to the sale, delivery

7

and any repair of the subject crossbow;

24. All Employee handbooks as well as practices and procedures in effect from 2012-2017;

25. All employee memoranda, e-mails and other communication circulated from 2012-2017 relating to crossbows, crossbow repair and customer service related to crossbows;

26. All incident reports and Workers' Compensation information involving MHO employees and/or agents being injured by a crossbow, specifically including the Barnett line of crossbows;

27. Complaints or inquiries from any governmental or safety agency regarding Barnett's crossbows;

28. Documents (e.g., minutes of meetings, memorandums, emails, text messages, correspondence and/or conversation notes) involving the Consumer Products Safety Commission, Underwriters Laboratories and any other federal, industry or consumer protection entity pertaining to the Ghost 410 model or any other crossbow with the same anti-dry fire or safety mechanism, and its components; and,

29. The policies and declaration pages pertaining to any insurance coverage that might provide coverage for the subject incident.

## DEFINITIONS AND INSTRUCTIONS

A.     These Requests for Production are submitted for the purposes of discovery and are not to be taken as waiving any objections which may be made at trial to the introduction of evidence by Plaintiffs on subjects covered by these Requests or as an admission at trial of the relevance or materiality of any of the matters covered by these Requests.

B.     "Defendant" in this Set of Requests shall refer to Defendant Mountain Heritage Outdoors, Inc., a/k/a Mountain Heritage Outdoors & Taxidermy and Pine Mountain Archery, and, where applicable, any other person acting on purporting to act on their behalf, employees, and agents, including any attorney or other representative. "Barnett" shall refer to Defendant Barnett Outdoors, LLC, a/k/a Barnett Crossbows and, where applicable, any other person acting

8

on purporting to act on their behalf, employees, and agents, including any attorney or other representative.

C.    "You" and "your" shall refer to Defendant Mountain Heritage Outdoors, Inc., a/k/a Mountain Heritage Outdoors & Taxidermy and Pine Mountain Archery, as well as any other persons acting or purporting to act on behalf of said Defendant, including any attorney or other representative.

D.    As used herein, the words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of these Requests any document or information that might be deemed outside its scope by another construction.

E.    "Person" or "people" when used in this Request includes human beings, corporations, partnerships, associations, firms, proprietorships, joint ventures, governmental agencies (federal, state or local), or any other legal or business organizations.

F.    "Communication" shall mean and include every manner or means of disclosure, transfer, transmittal, or exchange, and every disclosure, transfer, transmittal, or exchange of information, whether face-to-face, by telephone, mail, personal delivery, e-mail, text or otherwise.

G.    "Statement" means and includes any written or graphic statement signed or otherwise adopted or approved by the users in making it, any stenographic, mechanical, electrical, or other recording or transcription thereof which is a substantially verbatim recital of an oral statement made by the person making it and contemporaneously recorded.

H.    "Document" and "documents" shall be used in their broadest sense and shall mean and include all written, printed, typed, recorded, or graphic matter of every kind and description, both originals and copies and all attachments and appendices thereto. Without

9

limiting the foregoing, the terms "document" and "documents" shall include all agreements, contracts, communications, correspondence, letters, e-mails, links, text messages, telegrams, telexes, messages, memoranda, records, reports, books, summaries, or other records of telephone conversations or interviews, summaries or other records of personal conversations, minutes or summaries or other records of personal meetings and conferences, summaries or other records of meetings and conferences, summaries, diaries, diary entries, calendars, appointment books, time records, instructions, work assignments, visitor records, forecasts, statistical data, statistical statements, work sheets, work appears, drafts, graphs, maps, charts, tables, marginal notations, notebooks, telephone bills or records, bills, statements, records of obligation and expenditure, invoices, lists, journals, advertising, recommendations, files, printouts, compilations, tabulations, purchase orders, receipts, sell orders, confirmations, checks, letters of credit, envelopes or folders or similar containers, voucher analyses, studies, surveys, transcription or hearings, transcripts of testimony, expense reports, microfilm, microfiche, articles, speeches, tape or disc recordings, sound recordings, video recordings, film, tapes, photographs, punch cards, programs, data compilations from which information can be obtained (including matter used in data processing), and other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated, computer sorted, or electronically sorted matter, however and by whomever produced, prepared, reproduced, disseminated, or made. The terms "document" and "documents" shall include all copies of documents by whatever means made, except that where a documents is identified or produced, identical copies thereof which do not contain any markings, additions, or deletions different from the original need not be separately produced. "Document" and "documents" means and includes all matter within the foregoing description that is in the possession, control or custody of the Defendant or in the possession, control or custody of any attorney for the

10

Defendants. Without limiting the term "control," a document is deemed to be within your control if you have ownership, possession, or custody of the document, or the right to secure the document or copy thereof from any person or public or private entity having physical possession thereof.

I.      "Relating to"or "regarding" as used in these Requests means and includes pertaining to, recording, evidencing, containing, setting forth, reflecting, showing, disclosing, describing, explaining, summarizing, constituting, concerning or referring to, whether directly or indirectly.

J.      If you object to production of any document based on a claim of privilege, work product or any other exemption from discovery, please provide a privilege log describing in detail the document, the author, any addressees, the date of the document, the basic subject of the document, and the reasons for each objection.

PLEASE TAKE NOTICE that this Request is deemed continuing to and through trial of this case. Should you in the future discover any items relating to any of the above matters of this Request, you are required to notify Plaintiffs' counsel of said information by way of Supplemental Answers to this Request, or an objection will be made at trial for the use of information not revealed.

TROY JARRELL, JR., and
KIMBERLY JARRELL,
Plaintiffs, By:

_____
MARK H. MITCHELL
PLAINTIFFS' LAWYER

11

MARK H. MITCHELL
PLAINTIFFS' LAWYER
West Virginia State Bar #2582
Co-Counsel for Plaintiffs
30 East Second Avenue
Williamson, West Virginia 25661
Telephone:  (304)235-3902
Facsimile:  (304)235-3903
E-mail: mhm@markhmitchell.com

ROBERT W. ABSTEN
PLAINTIFFS' LAWYER
West Virginia State Bar #9818
Co-Counsel for Plaintiffs
30 East Second Avenue, Suite 2
Williamson, West Virginia 25661
Telephone: (304)610-6129
Facsimile: (304)235-3903
Email: robert.absten@gmail.com

## IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

**TROY JARRELL, JR. and KIMBERLY JARRELL,**

**Plaintiffs,**

v.                                                    Civil Action No.: 19-C-158

**BARNETT OUTDOORS, LLC, a Florida corporation,**
**a/k/a BARNETT OUTDOORS, INC., and BARNETT CROSSBOWS,**
**PLANO SYNERGY HOLDING, INC., a Delaware corporation,**
**and MOUNTAIN HERITAGE OUTDOORS, INC.,**
**a/k/a MOUNTAIN HERITAGE OUTDOORS & TAXIDERMY**
**and PINE MOUNTAIN ARCHERY,**

**Defendants.**

### PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANT MOUNTAIN HERITAGE OUTDOORS, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

NOW COME the Plaintiffs, **TROY JARRELL, JR. and KIMBERLY JARRELL**, by

counsel, Mark H. Mitchell and Robert W. Absten, and submit this *Supplemental Response to*

*Defendant Mountain Heritage Outdoors, Inc.'s Motion to Dismiss for Failure to State a Claim.*

### I.     INTRODUCTION

Plaintiff Troy Jarrell, Jr. sustained severe bodily injuries on October 31, 2017 while deer

hunting in Mingo County, West Virginia when a defective Camo Barnett Ghost 410 1.5-5X Scope

Crossbow unexpectedly discharged and fired before an arrow was fully loaded. Defendants Barnett

Outdoors, LLC, a Florida corporation, and Mountain Heritage Outdoors, Inc., a West Virginia

corporation, are respectively the manufacturer and seller of the crossbow. Plaintiffs' Complaint

includes allegations of negligence, strict liability, breach of warranty, violation of the West

Virginia Consumer Credit and Protection Act (§46A-1 *et seq.*) and product liability claims. (*See*



Complaint, ¶¶ 1 and 3). All allegations set forth in Plaintiffs' Complaint are ascribed to each of the Defendants, including Defendant Mountain Heritage Outdoors, Inc.

The Court held a hearing on July 14, 2020 via Zoom pursuant to the subject Motion to Dismiss. By Order entered August 25, 2020, the Court established a discovery period to determine whether the Defendant seller, Mountain Heritage Outdoors, Inc., may be characterized as an "innocent seller" under West Virginia Code § 55-7-31, which provides in pertinent part: "(b) No product liability action shall be maintained against a seller, unless: (1) The seller had **actual knowledge** of the defect in the product that was a proximate cause of the harm for which recovery is sought[.]" (Emphasis added).

Accordingly, the Order stated: "[T]he court has determined plaintiffs are granted the opportunity to conduct discovery to determine whether Defendant Mountain Heritage Outdoors had **actual knowledge** of a defect in the subject product, as alleged by plaintiffs." (Emphasis added). As discussed *supra*, discovery conducted by Plaintiffs to date, provides clear evidence that Defendant seller is not an "innocent seller" pursuant to the mandatory provisions of West Virginia Code § 55-7-31.

Additionally, Plaintiffs submit that this formal supplemental response is necessitated to refute defense counsel's unsubstantiated oral argument, initiated at said hearing, that the proposed "discovery period" should not extend beyond a date which defense counsel erroneously asserts is the one-year deadline for removal of this case to Federal Court. Apparently, defense counsel presupposes that this Court will grant Defendant Mountain Heritage Outdoors, Inc.'s Motion to Dismiss, allowing other Defendants to assert diversity as the basis for federal jurisdiction under 28 U.S.C. §1332.

To be sure, as further discussed *infra*, the subject motion to dismiss must be denied. Moreover, removal is not warranted under the facts and applicable law of this case. Therefore, any time constraint concerns asserted by Defendant pursuant to said "discovery period" are clearly without merit.

## II. ARGUMENT

Plaintiffs incorporate herein the Background, Standard of Review and Argument sections set forth in *Plaintiffs' Response to Defendant Mountain Heritage Outdoors, Inc.'s Motion to Dismiss for Failure to State a Claim*, dated July 10, 2020.

    A.    **Defendant Mountain Heritage Outdoors, Inc. Possessed "Actual Knowledge" of the Defect in the Subject Crossbow and thus is not an "Innocent Seller" Under West Virginia Code § 55-7-31.**

In this Supplemental Response, Plaintiffs address the merits of Defendant Mountain Heritage Outdoors, Inc.'s subject motion to dismiss pursuant to the "opportunity" afforded by this Court's Order, entered August 25, 2020, "to conduct discovery to determine whether Defendant Mountain Heritage Outdoors had **actual knowledge** of a defect in the subject product, as alleged by plaintiffs." (Emphasis added).

Plaintiffs assert that Defendant Mountain Heritage Outdoors, Inc., is not an innocent seller pursuant to West Virginia Code § 55-7-31. Through the course of discovery, Plaintiffs have acquired irrefutable proof that said seller had **actual knowledge** that the instructions accompanying the subject crossbow were not proper for the use of the crossbow which was sold and distributed to the Plaintiffs on September 11, 2017. (Emphasis added).

In *Defendant Mountain Heritage Outdoors, Inc.'s Responses to Plaintiffs' First Rule 36 Request for Admissions*, it was admitted "that prior to 11 September 2017, the date MHO sold the subject Camp Ghost 410 1.5-5X Scope Crossbow Package to Plaintiffs, both Brian Mabe and Chad

3

Scyphers had read and/or were otherwise familiar with the instructions and guidance contained in

the owners' manuals that accompanied Barnett crossbows including, but not limited to, the Ghost

410." This admission was confirmed during the deposition testimony of Chad Scyphers, alleged

lead bow technician for Defendant Mountain Heritage Outdoors, Inc., as follows:

> **Q.     In what's called discovery I asked your attorney some questions and one of the answers was that you had read the Barnett Ghost 10 [*sic*] owner's manual prior to the time in September of 2017 when this crossbow was sold to Troy Jarrell, is that accurate?**
>
> MR. SHEEAN:  Object to the form. Mischaracterizes the evidence. You can answer.
>
> A.     Yes, I've read the manual.
>
> **Q.     And you have read it before 2017 as I understand the answer that was provided to me.**
>
> A.     Yes.
>
> MR. SHEEAN:  Object to the form.
>
> **Q.     Your answer is yes you did read the crossbow manual for the Ghost 410 prior to 2017; correct?**
>
> A. Yes.

(*See* Deposition of Chad Scyphers, 9/2/2020, p. 12, lines 2-13).

During his deposition testimony, Mr. Scyphers stated that he had read the subject

crossbow's owner's manual and, in fact, had read *hundreds* of Barnett crossbow manuals during

the course of his employment with Mountain Heritage Outdoors, Inc.

*See* the following testimony:

> **Q.     Can you estimate for us how many crossbow owner manuals you've read prior it to 2017 that were produced by Barnett?**
>
> A.     I'm not sure on the number.
>
> **Q.     Could you give us an estimate?**

4

MR. SHEEAN: Object to the form.

A.     Several. Again, I'm not sure of the number.

**Q.     Would a dozen be a fair estimate?**

MR. SHEEAN: Object to the form, calls for speculation.

A.     It's probably in the hundreds.

(*Id.*, Scyphers Deposition, pp. 13-14).

Mr. Scyphers, an experienced crossbow user who has read hundreds of crossbow manuals, testified as to the proper way to cock a crossbow, wherein he stated that it was essential to "look and see" that the safety was engaged before releasing the rope:

**Q.     Tell me -- do you properly cock crossbows?**

A.     Yes.

**Q.     How do you do it?**

A.     Like I just said, you put the string, it goes behind the scope, there's a groove, you put the two hooks into the string of the crossbow, you pull it back and it goes on safe.

**Q.     How do you know it goes on safe?**

A.     You can visually physically look and see it goes on safe.

**Q.     Do you visibly look while you're still holding the rope?**

A.     You can.

**Q.     To properly do it are you suppose to look before you let go?**

A.     Yeah, that's the way I do it, I mean.

**Q.     I want to understand how you do it. I'm not sure that I do. You pull it back until you see the safety engaged; right?**

A.     Yes.

**Q.     You do that by looking?**

5

A.    Yes.

(*Id.*, Scyphers Deposition, pp. 8-9).

This is the same method by which Mr. Scyphers showed and continues to show Defendant Mountain Heritage Outdoors, Inc.'s customers to cock a crossbow, including customers who purchased the Ghost 410. Mr. Scyphers told and continues to tell customers to look at the safety, not just listen for a click, to ensure that the safety is engaged. The directions Mr. Scyphers provides and continues to provide to customers is contrary to the instructions provided in the Ghost 410 owner's manual and, therefore, indicative that the seller had **actual knowledge** of the instructions that accompanied the subject crossbow not being proper for the use of the crossbow. Moreover, the seller had **actual knowledge** that the product was defective and this is a proximate cause of the harm for which recovery is sought.  (Emphasis added).

*See* the following testimony:

**Q.    Well, when you sell crossbows to people, do you give them a piece of paper that says be sure and pull it back until you see the safety engage?**

MR. SHEEAN:  Object to the form.

A.    In the store.

**Q.    In the store?**

A.    I do, sir. I tell them.

**Q.    You tell every customer that purchases a crossbow in the store to pull it back until the safety engages?**

A.    Yes.

**Q.    You do?**

A.    Sir, if they're trying out a crossbow, I show them how to pull it back, make sure the safety is engaged and you can load the bolt and fire it.

6

Q.     But according to the book, when it clicks, the safety is engaged. That's what we read, didn't we?

MR. SHEEAN:  Object to the form. The book speaks for itself.

A.     Yes, that's what the book says.

Q.     And that's your understanding.

MR. SHEEAN:  Object to the form.

A.     Yes.

Q.     I may have confused you or confused myself, but you don't give them a piece of paper that says look to see that the safety is engaged. You say that you tell customers about that.

MR. SHEEAN:   Object to the form.

Q.     Is that accurate?

A.     Yes.

Q.     You don't tell every customer because some people just walk in and buy it without comment, don't they?

A.     I usually go through the steps, I mean, if they're a new customer.

Q.     You take them to the firing range and show them how to cock it?

A.     Yes.

Q.     What percentage of customers would you say you do that for?

A.     I mean, pretty much all of them unless they're, I mean, experienced on crossbows.

(*Id.*, Scyphers Deposition, pp. 144-146).

Mr. Scyphers further testified that the Ghost 410 owner's manual never instructed the user to look at the safety to see if it was "on" or "off" when cocking the crossbow, but instead instructed the user to listen for an audible click. This instruction deviates from Mr. Scypher's testimony concerning the proper way to cock and fire a crossbow and the manner in which he showed and

7

continues to show Defendant Mountain Heritage Outdoors, Inc.'s customers to cock and fire a crossbow. This serves as additional proof of actual knowledge, as aforesaid.

*See* the following testimony:

**Q.     Yeah, we've discussed that. What I'm asking is: Listening for an audible click is not part of the procedure that you follow to cock a Barnett crossbow; is that correct?**

MR. SHEEAN: Object to the form.

A.     It does make a click when you do it, but I visually look at the safety and make sure it is on safe.

**Q.     I know, but if a person follows this instruction and they hear a click, have they followed the proper procedure so far in this owner's manual?**

MR. SHEEAN: Object to the form.

A.     That's what it states in the manual. I'd say yes.

**Q.     So when my client pulled it back and heard a click, you would agree that he – fair for him to assume that it locked into the trigger mechanism?**

MR. SHEEAN: Object to the form.

**Q.     That's just what it tells him. I'm just asking you if he followed this, is it fair for him to assume that this is true?**

MR. SHEEAN: Object to the form.

A.     I would assume so. I mean, if it would click it should have went on safety.

**Q.     That's what it's designed to do is your understanding; correct?**

A.     Yes.

**Q.     When you hear the click, it's gone into the safety, the safety is on; correct?**

MR. SHEEAN: Object to the form.

**Q.     Correct you said?**

A     Yes.

8

**Q.    And you'll agree with me so far in the instructions it doesn't say anything about looking at the safety?**

MR. SHEEAN: Object to the form.

**Q.    Correct?**

A.    It doesn't say looking, no.

(*Id.*, Scyphers Deposition, pp. 48-50).

Brian Mabe, president and designated Rule 30(b)(7) witness for Defendant Mountain Heritage Outdoors, Inc., testified that he deferred to Mr. Scyphers with respect to crossbow matters, including matters related to the Ghost 410.

*See* the following testimony:

**Q.    Is it fair to say that Chad is the most knowledgeable person about the safety guidelines and operation of Barnett crossbows?**

MR. SHEEAN: Object to the form.

**Q.    You can still answer. Just because he objects, he's just protecting the record, but you still need to answer.**

A.    I'm not sure if he's the most knowledgeable. I mean, he probably deals with it more than the rest of the people I'd say.

**Q.    Okay. By virtue of dealing it with more than the other people, would you think that he has more knowledge about the safety guidelines and operation of Barnett crossbows?**

MR. SHEEAN: Object to the form.

A.    Probably so.

(*See* Deposition of Brian Mabe, 09/02/20, p. 18).

**Q.    Does he shoot crossbows more often than you do?**

A.    He does.

**Q.    Would you say he has more experience shooting crossbows than you do?**

9

A.      Yes.

(*Id.*, Mabe Deposition, p. 19).

**Q.      He was right about that. Chad Scyphers told us that he had read, I think, something on the order of a hundred owner's manuals and he gave a considerable amount of testimony relating to crossbow owner's manuals, in particular Barnett crossbow owner's manuals.· Do you have that same knowledge or would you defer to Mr. Scyphers on that topic so I won't have to go into it?**

A.      He's read way more manuals than I have.

**Q.      If you can -- if you think he has more knowledge about the manuals than you do, then I can move on to another area and get us out of here probably a couple hours shorter.**

A.      Yeah, he has more knowledge on the manuals than I do for sure.

(*Id.* Mabe Deposition, pp. 34-35).

Thus, in accordance with the deposition testimony of these two key witnesses, Defendant

seller Mountain Heritage Outdoors, Inc. is clearly not an "innocent seller" pursuant to the dictates

of West Virginia Code § 55-7-31.


B.      **Because Defendant Mountain Heritage Outdoors, Inc. is a Citizen of West Virginia, which is where Plaintiffs Jarrell have sued, the Case before this Court is not Removable.**

Secondly, Plaintiffs submit the following response to defense counsel's suggestion to this

Court Defendants will seek removal to federal court.

The controlling federal statute, 28 U.S.C. §1441(b)(2), addresses removal based on

diversity of citizenship as follows:

A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title [28 USCS §1332(a)] **may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.** (Emphasis added).

10

Plaintiffs Troy Jarrell, Jr. and Kimberly Jarrell are residents of Delbarton, Mingo County, West Virginia. (*See* Complaint, ¶ 2). Provisions set forth in Plaintiff's Complaint relevant to the respective Defendants' "citizenship" are as follows:

Paragraph 11 of Plaintiffs' Complaint asserts:

That Defendant Barnett Outdoors, LLC, the manufacturer of the subject crossbow, was and is a **Florida corporation** not authorized to do business in West Virginia but is conducting business in West Virginia. Defendant Barnett Outdoors, LLC, is also known as Barnett Outdoors, Inc., and Barnett Crossbows. Its principal office address is 955 Live Oak Street, **Tarpon Springs, Florida** 34689. Its designated service of process agent is Corporation Service Company, 1201 Hayes Street, Tallahassee, Florida, 32301. (Emphasis added).

Paragraph 12 of Plaintiffs' Complaint asserts:

That Plano Synergy Holding Inc. is the parent company and otherwise affiliated with and/or exercises control of Defendant Barnett Outdoors, LLC, and is a **Delaware corporation** not authorized to do business in West Virginia but is conducting business in West Virginia. Its principal office address is 431 E South Street, **Plano, Illinois** 60545. Its designated service of process agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. (Emphasis added).

Paragraph 13 of Plaintiffs' Complaint asserts:

That Defendant Mountain Heritage Outdoors, Inc., the retailer of the subject crossbow, was and is a **West Virginia corporation** that has been authorized to do business in the state of West Virginia since 25 January 2007. Defendant Mountain Heritage Outdoors, Inc., is also known as Mountain Heritage Outdoors & Taxidermy and Pine Mountain Archery. Its principal office address is 607 Athens Road, **Princeton, West Virginia** 24740. Its designated notice of process agent is Brian Mabe, 607 Athens Road, Princeton, West Virginia 24740.

Assuming *arguendo* that even if Plaintiffs are unable to prove that seller/retailer Defendant Mountain Heritage Outdoors, Inc., a West Virginia corporation, had actual knowledge of the defect of the subject crossbow, then their Complaint, on its face, prevents the manufacturer, Barnett Outdoors, LLC, from removing the case to federal court.

Plaintiffs' Complaint alleges violations of the West Virginia Consumer Protection Act, § 46A-1 *et seq.* for representing that the crossbow has "characteristics, uses or benefits that it does not have." (*See* Complaint, ¶ 8). In fact, the subject crossbow is advertised as having "an anti-dry fire mechanism that engages every time." That is, when one cocks the crossbow, the string is held in the trigger mechanism and the safety automatically turns on. Plaintiffs' expert witness, however, can demonstrate that the anti-fire mechanism does not engage "every time."

Paragraph 9 of Plaintiffs' Complaint alleges that "[t]he Defendants knew of the defective condition and propensity for harm of the crossbow, both prior to and after the sale of the crossbow to the Plaintiffs." *See* West Virginia Code §55-7-31(a)(4)(C), which defines "Product liability action" as "any civil action brought against a manufacture or seller of a product, based in whole or in part on the doctrine of strict liability in tort, for or on account of personal injury death or property damage caused by or resulting from . . . **[t]he failure to provide proper instructions for the use of a product.**" (Emphasis added). Here, Plaintiffs contend that the owner's manual does not provide the proper instructions for the product. In fact, the manual tells the User that the "automatic anti dry fire engages every time" but the manual fails to warn the User that the exact opposite is possible. That is, a User can cock the bow without these supposed safety mechanisms engaging and that the bow will fire unexpectedly without the User touching the trigger or even lightly brushing against it.

Even if the innocent seller's strict liability claim of product liability were dismissed, Plaintiffs negligence and warranty claims remain viable.

Unquestionably, defense counsel's thinly veiled threat of removal has no merit in light of relevant federal court precedent. Two federal district court decisions control removal by Defendant Mountain Heritage Outdoors, Inc., rendering removal improper from the outset.

12

In *Hughes v. Mylan Inc.*, 2011 U.S. Dist. LEXIS 123544* (October 25, 2011), the United

States District Court for the Eastern District of Pennsylvania provides a lengthy discussion of

U.S.C. § 1441(b) in the context of a products liability action wherein lawsuits initially filed in the

Philadelphia Court of Common Pleas alleged that a pain relief patch manufactured by defendants

was defective and deadly. Procedurally, the first five cases before the District Court were

remanded; subsequently, the Mylan defendants removed an additional nineteen cases to the district

court. *Hughes* at *14. The court explained:

> In September 2011, the Mylan Defendants removed all nineteen cases now before
> this Court. For two of these cases, **the Mylan Defendants' notice of removal was
> filed within thirty days of receipt of the original complaint.** For the remaining
> cases, including those that were previously removed, **the notice of removal was
> not filed within thirty days of the filing of the original complaint but was filed
> within thirty days of the filing of Plaintiffs' Original Master Long Form
> Complaint.** After Plaintiffs filed a motion to remand, the nineteen cases were
> consolidated before this Court for purposes of deciding the remand motion. The
> Mylan Defendants filed a response to Plaintiffs' request for remand.

*Hughes* at *14-15.

Moreover, the Standard of Review provided by the *Hughes* Court is definitively on point:

> A defendant seeking to invoke federal diversity jurisdiction may only remove a
> case to federal court if "none of the parties in interest properly joined and served as
> defendants is a citizen of the State in which the action is brought." 28 U.S.C. §
> 1441(b). The removal statute should be strictly construed and all doubts should be
> resolved in favor of remand. *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29
> (3d Cir. 1995); see also *Brown v. Francis*, 75 F.3d 860, 864-65, 33 V.I. 385 (3d
> Cir. 1996). The removing defendant bears the burden of demonstrating that
> jurisdiction is appropriate. *See Pullman Co. v. Jenkins*, 305 U.S. 534, 540, 59 S. Ct.
> 347, 83 L. Ed. 334 (1939); *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d
> Cir. 1990). "Because a party who urges jurisdiction on a federal court bears the
> burden of proving that jurisdiction exists, a removing party who charges that a
> plaintiff has fraudulently joined a party to destroy diversity of jurisdiction has a
> heavy burden of persuasion." *Boyer*, 913 F.2d at 111 (internal quotations omitted).

*Hughes* at *15.

13

In discussing the propriety of the Mylan Defendants' removal, the *Hughes* Court acknowledged, citing 28 U.S.C. § 1441(a), that "[a] defendant may remove any civil action brought in state court over which the district courts have original jurisdiction." Importantly, however, citing 28 U.S.C. § 1441(b), the court stressed the following caveat: "[I]f subject matter jurisdiction is premised on diversity of citizenship, the forum defendant rule states that a case is removable 'only if **none** of the parties in interest properly joined and served as defendants is a citizen of the State in which such action [was] brought.'" *Hughes* at *16-17.  (Emphasis added).

The *Hughes* Court emphasized:

**Because Mylan is a citizen of Pennsylvania, which is where Plaintiffs have sued, the cases before the Court are not removable.**

*Hughes* at *117. (Emphasis added).

Likewise, because Defendant Mountain Heritage Outdoors, Inc. is a citizen of West Virginia, which is where Plaintiffs Jarrell have sued, the case before this Court is <u>not removable</u>.

Timing of removal is germane to the *Hughes* Court's analysis, as well as to the case *sub judice*. Notably, in his comments about the discovery period authorized by this Court on the "innocent seller" issue, counsel for Defendant Mountain Heritage Outdoors, Inc. expressed concern that the "one-year" deadline for removal of this case would expire. Counsel is mistaken. Based on the *Hughes* Court's analysis, Defendant Mountain Heritage Outdoors, Inc. does not have a deadline of one year to remove the case. Rather, as the Hughes Court stated: "Ordinarily, a defendant must remove a case within thirty days of receipt of the initial pleading. 28 U.S.C. §1446(b)." *Hughes* at *18.

14

In *Cox-Stewart v. Best Buy Stores, L.P.*, 295 F. Supp. 2d 566 (2003), the United States District Court for the District of Maryland, held the case before the court to be not removable, under a different, but equally effective and applicable analysis as that of *Hughes, supra*.

On March 20, 2003, Plaintiff Cox-Stewart filed a complaint in the Circuit Court for Prince George's County against Defendant Best Buy, the City of Laurel and Officer Martindale, alleging false imprisonment, defamation, false arrest, battery, violations of state constitutional rights and malicious prosecution. On April 28, 2003, Plaintiff filed an amended complaint. On July 2, 2003, the state court dismissed the complaint as to the City of Laurel and Officer Martindale. Subsequently, on July 25, 2003, Defendant Best Buy removed the action to the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1441(a) and asserted diversity as the basis for federal jurisdiction under 28 U.S.C. § 1332. After removal, on August 11, 2003, Plaintiff filed two separate motions: a motion to reconsider the state court's dismissal orders or, in the alternative, to remand for such reconsideration, and a motion for leave to file a second amended complaint. The first motion was opposed by the City of Laurel and Officer Martindale. Defendant Best Buy opposed both motions. *Cox-Stewart* at 567. Pursuant to this procedural posture, the district court held that "removal was improper from the outset" and remanded the case to the Circuit Court of Prince George's County.

The district court's analysis is *apropos* the instant matter, as follows:

Complete diversity of citizenship must be established at the time of removal. *See Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1166 (4th Cir. 1988); *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 391, 141 L. Ed. 2d 364, 118 S. Ct. 2047 (1998) (case must fall "within the 'original jurisdiction' of the federal court … at the time of removal"). Defendant Best Buy removed the instant action to this court on diversity grounds, after the state court dismissed the City of Laurel and Officer Martindale as parties to the complaint, and filed its notice of removal on July 25, 2003. *See* Paper 17. Ordinarily, pursuant to 28 U.S.C. § 1446(d), "[a] proper filing of a notice of removal immediately strips the state court of its

15

jurisdiction." *Yarnevic v. Brink's Inc.*, 102 F.3d 753, 754 (4th Cir. 1996). (Footnote omitted).

**Nevertheless, an action may not be removable despite apparently complete diversity of the parties where, as here, the non-diverse party has been involuntarily dismissed by order of the state judge.**" *Higgins*, 863 F.2d at 1166; *see also Grubb v. Donegal Mut. Ins. Co.*, 935 F.2d 57, 60 (4th Cir. 1991) (**if plaintiffs did not voluntarily dismiss defendants, "then the case was improperly removed**"). The reason is quite sensible, as explained by the Fourth Circuit: "Although complete diversity may **temporarily exist** between the parties, suggesting that removal is proper, diversity jurisdiction may ultimately be destroyed if the state appellate court reverses the dismissal of the non-diverse party." *Higgins*, 863 F.2d at 1166. (Footnote omitted). **The trend among federal courts "appears to retain the distinction" between the involuntary dismissal and voluntary dismissal of nondiverse parties, with regard to the propriety of removal.** *Id.* (citing 14 B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3723 (3d ed. 1998)). (Emphasis added).

The dismissal orders entered in the state court were interlocutory and thus not final judgments because they "did not dispose of all claims against all parties, under Md. Rule 2-602 (a)." *Pulse One Communications, Inc. v. Bell Atl. Mobile Sys., Inc.*, 760 F. Supp. 82, 83 (D.Md. 1991). (Footnote omitted). **The involuntary dismissal of the City of Laurel and Officer Martindale did not terminate them "from the action with sufficient finality to warrant removal" to federal court. *Id.* Removal therefore was improper from the outset.** Accordingly, this case will be remanded to the Circuit Court for Prince George's County. (Emphasis added).

*Cox-Stewart* at 567-568.

[Note: *Cox-Stewart* has been cited by several other decisions from the Fourth Circuit: *Drye v. Bankers Life & Cas. Co.*, 2006 U.S. Dist. LEXIS at 54998*; 2006 WL 2077563 (U.S. Dist. Ct. for the Western District of North Carolina, Charlotte Division, 2006); *Erie Ins. Co. v. Chugach McKinley, Inc.*, 2010 U.S. Dist. LEXIS 113744*; 2010 WL 4225631 (U.S. Dist. Ct. for the District of Maryland, 2010), and *Yates-Jones, v. Kellogg Co.*, 2007 U.S. Dist. LEXIS 63806*; 2007 WL 2484939 (U.S. Dist. Ct. for the District of Maryland, 2007)].

### III.   CONCLUSION

Therefore, Plaintiffs Troy Jarrell, Jr. and Kimberly Jarrell have acquired irrefutable proof

that Defendant Mountain Heritage Outdoors, Inc. possessed actual knowledge that the instructions

accompanying the subject crossbow, which it sold and distributed to Plaintiffs, were not proper for

16

the use of the crossbow. Consequently, said Defendant may not be characterized as an "innocent seller" pursuant to West Virginia Code § 55-7-31.

Additionally, the Circuit Court of Mingo County must decide the ultimate merits of this case. Defendant Mountain Heritage Outdoors, Inc. is precluded from removing this case to federal court by the dictates of both 28 U.S.C. § 1441(b) and 28 U.S.C. §1446(b), as well as the controlling authorities, *Hughes v. Mylan Inc.*, 2011 U.S. Dist. LEXIS 123544* (October 25, 2011) and *Cox-Stewart v. Best Buy Stores, L.P.*, 295 F. Supp. 2d 566 (2003).

Plaintiffs respectfully request that this Honorable Court enter an Order denying Defendant Mountain Heritage Outdoors, Inc.'s Motion to Dismiss, and provide all other such relief as this Court sees just.

TROY JARRELL, JR., and
KIMBERLY JARRELL,
Plaintiffs, by:

MARK H. MITCHELL
PLAINTIFFS' LAWYER

**MARK H. MITCHELL**
**PLAINTIFFS' LAWYER**
**West Virginia State Bar #2582**
**Co-Counsel for Plaintiffs**
**30 East Second Avenue**
**Williamson, West Virginia 25661**
**Telephone:  (304)235-3902**
**Facsimile: (304)235-3903**
**E-mail: mhm@markhmitchell.com**

**ROBERT W. ABSTEN**
**PLAINTIFFS' LAWYER**
**West Virginia State Bar #9818**
**Co-Counsel for Plaintiffs**
**30 East Second Avenue, Suite 2**
**Williamson, West Virginia 25661**
**Telephone: (304)610-6129**
**Facsimile: (304)235-3903**
**Email: robert.absten@gmail.com**

17

## IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

**TROY JARRELL, JR., and**
**KIMBERLY JARRELL,**

      **Plaintiffs,**

**v.**                                      **Civil Action No. 19-C-158**

**BARNETT OUTDOORS, LLC, a Florida Corporation,**
**a/k/a BARNETT OUTDOORS, INC., and BARNETT CROSSBOWS,**
**PLANO SYNERGY HOLDING INC., a Delaware Corporation,**
**and MOUNTAIN HERITAGE OUTDOORS, INC.,**
**a/k/a MOUNTAIN HERITAGE OUTDOORS & TAXIDERMY**
**and PINE MOUNTAIN ARCHERY,**

      **Defendants.**

## CERTIFICATE OF SERVICE

I, Mark H. Mitchell, co-counsel for Plaintiffs, do hereby certify that the foregoing *Plaintiffs' Supplemental Response to Defendant Mountain Heritage Outdoors, Inc.'s Motion to Dismiss for Failure to State a Claim* was this day served upon the following parties via facsimile, e-mail and by placing a true and correct copy of the same in the United States mail, postage prepaid, and addressed as follows:

Vaughn K. Schultz, Esq. (WV #10700)
BreiAnne Varner Redd, Esq. (WV #10894)
Dickie, McCamey & Chilcote, L.C.
The Wagner Building
2001 Main Street, Suite 501
Wheeling, West Virginia  26003-2854
Telephone: (304)233-1022
Facsimile: (888)811-7144
E-mail: vschultz@dmclaw.com
    bredd@dmclaw.com
*Counsel for Defendants Barnett Outdoors, LLC,*
*and Mountain Heritage Outdoors, Inc.*

Christopher T. Sheean, Esq. (IL #6210018)
Swanson, Martin & Bell, LLP
330 North Wabash Avenue
Suite 3300
Chicago, Illinois 60611
Telephone: (312)222-8559
Facsimile: (312)321-0990
E-mail: csheean@smbtrials.com
*Counsel for Defendants Barnett Outdoors, LLC,*
and *Mountain Heritage Outdoors, Inc.*

**DATED** this the 1st day of October, 2020.

                           **TROY JARRELL, JR., and**
                           **KIMBERLY JARRELL,**
                           **Plaintiffs, by:**

                           **MARK H. MITCHELL**
                           **PLAINTIFFS' LAWYER**

**MARK H. MITCHELL**
**PLAINTIFFS' LAWYER**
**West Virginia State Bar #2582**
**Co-Counsel for Plaintiffs**
**30 East Second Avenue**
**Williamson, West Virginia 25661**
**Telephone:  (304)235-3902**
**Facsimile:  (304)235-3903**
**E-mail: <u>mhm@markhmitchell.com</u>**

**ROBERT W. ABSTEN**
**PLAINTIFFS' LAWYER**
**West Virginia State Bar #9818**
**Co-Counsel for Plaintiffs**
**30 East Second Avenue, Suite 2**
**Williamson, West Virginia 25661**
**Telephone: (304)610-6129**
**Facsimile: (304)235-3903**
**Email: <u>robert.absten@gmail.com</u>**

# MARK H. MITCHELL
## LAWYER

05 October 2020

via e-mail *csheean@smbtrials.com*
Christopher T. Sheean, Esquire
Swanson, Martin & Bell, LLP
330 North Wabash, Suite 3300
Chicago, Illinois 60611

   Re: Troy Jarrell, Jr., et ux. v. Barnett Outdoors, LLC, et al.
     <u>Mingo County Circuit Court, Civil Action No: 19-C-158</u>

Dear Mr. Sheean:

  This letter is being sent pursuant to Rules 11 and 37 of the W.V.R.C.P. and in follow-up to the depositions of Brian Mabe and Chad Scyphers of Mountain Heritage Outdoors, Inc. ("MHO"), which were taken on 02 September 2020. Several issues have been raised pursuant to the deposition testimony of Mr. Mabe and Mr. Scyphers.

  1. Mr. Mabe was designated as the most knowledgeable person to appear in response to *Plaintiffs' Notice of Deposition of Defendant Mountain Heritage Outdoors, Inc., Pursuant to Rule 30(b)(7) and Rule 34 Request for Documents*. However, while deposing Mr. Mabe, he acknowledged that Mr. Scyphers was in fact more knowledgeable than he regarding crossbow guidelines and operation, crossbow manuals, and crossbow sales for MHO; this specifically includes the Barnett Ghost 410. Plaintiffs contend that the knowledge of the designated witness, Mr. Mabe, was misrepresented prior to the deposition.

  Additionally, you suggested deposing Mr. Scyphers first so that he did not have to wait around while Mr. Mabe was being deposed. Plaintiffs believe this was a calculated move to prevent Plaintiffs from deep diving into Mr. Scyphers' knowledge and from realizing that Mr. Scyphers is, in fact, the most knowledgeable MHO representative until his deposition was already over.

  Therefore, at the expense of your client(s), a second deposition of Mr. Scyphers is warranted.

  2. Mr. Mabe testified that he did not conduct a document search related to this case, even though *Plaintiffs' Notice of Deposition of Defendant Mountain Heritage Outdoors, Inc., Pursuant to Rule 30(b)(7) and Rule 34 Request for Documents* was filed on 22 July 2020 and you filed *Defendant Mountain Heritage Outdoors, Inc.'s Response to Plaintiffs' Notice of Deposition Pursuant to Rule 30(b)(7) and Rule 34 Request for Production* on 04 August 2020 with supplemental responses via e-mail only on 17 August 2020.



30 EAST 2ND
WILLIAMSON, WEST VIRGINIA 25661

PHONE (304) 235-3902
FAX (304) 235-3903

EXHIBIT
0
ALL-STATE LEGAL®

In your 17 August 2020 document submission e-mail, you state: "As indicated in the response to Plaintiff's Rule 30 b 7 notice of deposition, MHO has no documents relating to the design, distribution, repair or servicing of Barnett crossbows, and no documents relating to claims of injury regarding Barnett crossbows." How could this statement be true if no one asked Mr. Mabe for any such documents?

Additionally, as is required by Rule 34(b), please identify the corresponding request to the produced document submission.

If Mr. Mabe, president and designated 30(b)(7) witness for MHO, never conducted a document search related to this case then it calls into question the authenticity of *all* responses that were received from you.

MHO should forthwith conduct a proper document search and, at the expense of your client(s), a second 30(b)(7) deposition of Mr. Mabe is warranted.

I have attached my first draft of *Plaintiffs' Motion to Compel and Request for Sanctions* regarding MHO's discovery abuses. Perhaps, albeit unlikely, we can come to an agreement about how to proceed so that Plaintiffs will not have to bring these subjects to the Court's attention. Please advise prior to the 08 October 2020 hearing.

Lastly, this letter demands that MHO preserve all potential evidence and no potential evidence be destroyed in relation to this action. The computer system that MHO utilized on 11 September 2017, which was recently replaced but is evidently still functional and held in storage, is an item that has been identified as potential evidence. MHO may know of other items of potential evidence. MHO should preserve and not destroy the identified computer system. It would seem necessary for Mr. Mabe, perhaps with the help of an IT person, to forthwith search the computer for documents requested pursuant to Plaintiffs' *Rule 34 Request for Documents*.

Cordially,

MARK H. MITCHELL
LAWYER

/hh
enclosure as noted
cc: Troy and Kimberly Jarrell
    Robert W. Absten, Esquire
    Vaughn K. Schultz, Esquire
    BreiAnne Varner Redd, Esquire

IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

TROY JARRELL, JR. and
KIMBERLY JARRELL,

        Plaintiffs,

v.

BARNETT OUTDOORS, LLC, a Florida
Corporation, a/k/a BARNETT OUTDOORS,
INC., and BARNETT CROSSBOWS,
and MOUNTAIN HERITAGE
OUTDOORS, INC., a/k/a MOUNTAIN
HERITAGE OUTDOORS & TAXIDERMY
and PINE MOUNTAIN ARCHERY,

        Defendants.

Civil Action No. 19-C-158
Judge Miki Thompson

## MOUNTAIN HERITAGE OUTDOORS, INC.'S
### REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

NOW COMES, the Defendant, Mountain Heritage Outdoors, Inc. a/k/a MOUNTAIN

HERITAGE OUTDOORS & TAXIDERMY (hereinafter referred to as "Mountain Heritage"), by

and through the undersigned counsel, BreiAnne Varner Redd, Esquire, and the law firm of Dickie

McCamey & Chilcote, L.C., and Christopher T. Sheean, Esquire, admitted *pro hac vice*, and files

the within Reply Brief in Support of its Rule 12(b)(6) Motion to Dismiss averring as follows:

In order to defeat Mountain Heritage Outdoors, LLC's Motion to Dismiss, Plaintiffs must

demonstrate that Mountain Heritage was the retailer of the subject crossbow, and had actual

knowledge that the crossbow was defective. Plaintiff Troy Jarrell alleges that he was injured when

the string on his Barnett Ghost 410 unexpectedly discharged and fired before an arrow was fully

loaded. In response to the complaint, Mountain Heritage filed a motion to dismiss based on West

Virginia's innocent seller statute. At the hearing on Mountain Heritage's Motion to Dismiss, this



Court granted Plaintiffs sixty (60) days to conduct discovery to demonstrate that Mountain Heritage had actual knowledge of the complained of defect.

Plaintiffs fail to identify any such evidence. Plaintiffs do not present any evidence that Mountain Heritage had ever heard of anyone suffering an injury with a Barnett crossbow, let alone anyone suffering an injury with a Ghost 410 crossbow in a similar manner to Mr. Jarrell. Nor do Plaintiffs show that Mountain Heritage had any knowledge of a Barnett crossbow releasing its string without the user pulling the trigger. Instead, Plaintiffs' "evidence" of actual knowledge is, at best, constructive knowledge. Plaintiffs proffer the testimony of a Mountain Heritage employee, Chad Scyphers, who had no involvement in the sale of Mr. Jarrell's crossbow. Mr. Scyphers was asked to read the owner's manual for the crossbow that describes how to cock a crossbow by hand, and then asked whether he would agree that the process described differs from the method Mr. Scyphers uses. Mr. Scyphers agreed that it differed, in that he cocks his crossbow using a rope cocking device. Mr. Scyphers was never asked whether the Rope Cocking Device instruction sheet actually describes the method he uses (it does). Given Plaintiffs' failure to come forward with any evidence to demonstrate actual knowledge of a defect, this Court should grant Mountain Heritage's motion to dismiss.

## ARGUMENT

As noted in Mountain Heritage's Motion to Dismiss, West Virginia prohibits "product liability actions" against product sellers. W. Va. Code, §55-7-31. Subject to recognized narrow exceptions, no product liability action shall be maintained against a seller of a product sold on or after July 6, 2017. W. Va. Code §55-7-31(b). Plaintiffs assert in their two response briefs that Mountain Heritage had "actual knowledge of a defect," and therefore, can face liability under the act. However, Plaintiffs must demonstrate evidence of actual knowledge to survive the motion.

Plaintiffs filed a response on Friday, July 10, claiming that the complaint at issue included in Paragraph 9 the conclusory statement that "Defendants knew of the defective condition and propensity for harm of the crossbow," and claim that this allegation meets the exception to the innocent seller statute in W. Va. Code §55-7-31(b)(1), which provides, "(b) No product liability action shall be maintained against a seller, unless: (1) The seller had actual knowledge of the defect in the product that was a proximate cause of the harm for which recovery is sought."

1.      **Plaintiffs Have Presented No Evidence of Actual Knowledge of a Defect.**

Plaintiffs filed a supplemental response on October 1, 2020, and assert that they have obtained "irrefutable proof" to demonstrate actual knowledge of a defect. However, a plain reading of the testimony proffered fails to make any such showing. Plaintiffs first note that Chad Scyphers, a Mountain Heritage employee who had no involvement with the sale of a crossbow to Plaintiffs, admitted that he had read the owner's manual for the Barnett Ghost 410 crossbow. (*See* Plaintiffs' Supplemental Response Brief at p. 3-4, citing to Mountain Heritage's Responses to Plaintiffs' Request to Admit). Plaintiffs then cite to Mr. Scyphers' testimony that when he cocks any crossbow, he always visually checks to make sure that the safety has engaged. (*See* Plaintiffs' Supp. Response at 4-5, citing Scyphers Deposition, pp. 8-9; *see also,* deposition of Chad Scyphers, taken on September 2, 2020, as Exhibit 1). Plaintiffs allege that the Ghost 410 owner's manual does not instruct the user to look to see if the safety has engaged, and that this alleged discrepancy constitutes a defect. Even ignoring the fact that the rope cocking device instructions advise the user to pull back the rope until the user hears a click and the safety engages (*See* Ex. 1, Scyphers Dep., p. 135:5-8), and that the sole way a user can determine that the safety has engaged is to look (*Id.* at 130: 24-131:04), Plaintiffs' have still failed to demonstrate that Mountain Heritage had actual knowledge of a defect.

At best, the testimony of Mr. Scyphers demonstrates constructive knowledge.  None of the testimony reveals that, at the time Mr. Jarrell allegedly purchased the crossbow in 2017, Mountain Heritage had actual knowledge of any problem with the Ghost 410 crossbow, or that users of the Barnett Ghost 410 crossbow had failed to properly cock the crossbow and engage the safety.[1]  In fact, Mr. Scyphers testified to the opposite.  He testified he had no knowledge of any defect with the crossbow on five separate instances:

> Q.  Have you ever seen a defective anti dry fire trigger mechanism on any crossbow?
>
> A.  No, sir.
>
> Q.  Have you ever seen one on a Barnett crossbow?
>
> A.  No, sir

(Ex. 1, Scyphers Dep., pp. 69:23-70:04)

> Q.  Have you, in all the times that you've --strike that.  Have you ever failed to fully pull the string into the trigger mechanism?
>
> MR. SHEEAN:  Object to the form.
>
> A.  No, sir.
>
> Q.  What I'm getting at, you're batting a hundred percent.  You've never tried to cock a crossbow and not been able to get it to retain the string?
>
> A.  You say not retain it?
>
> Q.  Yes, sir.
>
> A.  No.  Out of all the crossbows I've cocked, it holds it and retains it and puts it on safe.

(*Id.* at 79:01-13).

---

[1] Plaintiffs allege that Mr. Scyphers' procedure differs from the procedure laid out in the owner's manual.  However, when asked what the manual means when it instructs the user who is cocking a crossbow by hand to "slowly release hand pressure on the string until you are sure it is secure in the trigger mechanism, Mr. Scyphers testified, "that means to me if you've got your hands on the string that you're pulling back with, slowly release the pressure, make sure it is secure in the trigger mechanism. If you pull back and engage the safety and the string stays there, it should be properly cocked." (Ex. 1, Scyphers Dep., pp. 53-54). Mr. Scyphers confirmed that he understood the manual to be consistent with his method of visually confirming the safety is engaged.

Q. I understand that you've never experienced cocking a crossbow and looking down and seeing that the safety was not actually engaged. Do you know if that ever happened to anyone else?

A. No, sir.

Q. No customer's ever said that that happened to them?

A. No, sir.

Q. And you've never seen anyone talking about that online?

A. No, sir.

(*Id.* at 83:04-13)

Q. Do you agree with me that crossbow is defective?

MR. SHEEAN: Object to the form.

A. I could not say, sir.

(*Id.* at 88:10-12).

The above-cited testimony makes clear that Mr. Scyphers had no knowledge prior to 2017 (or even prior to the deposition) of any alleged defect in either the crossbow or the owner's manual.

The "evidence" that Plaintiffs cite in their Supplemental Response falls short of what is required in the West Virginia Innocent Seller statute. W. Va. Code, §55-7-31. The statute requires "actual knowledge of the defect." Actual knowledge is not defined in the statute, but its meaning can be discerned from looking at other West Virginia Statutes, and from interpretation of similar innocent seller statutes in other jurisdictions. W.Va. Code, § 23-4-2(d)(2)(ii)(B) is a workers compensation employer immunity exception known as the "deliberate intention" exception. The plaintiff must show "that the employer, prior to the injury, had <u>actual knowledge</u> of the existence of the specific unsafe working condition and of the high degree of risk and the <u>strong probability</u> of serious injury or death presented by the specific unsafe working condition." W. Va. Code, § 23-4-2(d)(2)(ii)(B)(iii)(emphasis added). One court in West Virginia defined that "actual

5

knowledge" requirement as "subjective realization" and "appreciation" of the specific unsafe working condition. *Skaggs v. Kroger Co.*, 788 F.Supp.2d 501, 507 n.6 (S.D.W.Va.2011) (quoting *Blevins v. Beckley Magnetite, Inc.*, 408 S.E.2d 385, 385 (W.Va.1991).

Here, Plaintiffs allege no factual support for the blanket assertion that Mountain Heritage had "actual knowledge of a defect." In fact, Plaintiffs fail to identify any "knowledge" by Mountain Heritage that would constitute "subjective realization and appreciation" of a specific defect in the subject crossbow. *Reich v. Genzyme Corp.*, No. 14-CV-01684-RM-MJW, 2015 WL 5842418, at *8 (D. Colo. Oct. 7, 2015) (interpreting Colorado's statute and dismissing a claim against a seller because the allegations of actual knowledge as to the seller were conclusory). Moreover, Plaintiffs' conclusory "irrefutable evidence" is not sufficient under the statute. At best, Plaintiffs' evidence constitutes "constructive knowledge," which is insufficient under the statute. *Mix v. Target Corp.*, 759 F. Supp. 2d 876, 881 (W.D. Tex. 2010)(granting summary judgment for Target and holding that "should have known," or constructive knowledge, is insufficient under Texas's innocent seller statute).

As noted in Mountain Heritage's brief in support of its Motion to Dismiss, West Virginia Courts have held that the innocent seller statute "evince[s] a clear public policy in West Virginia to limit the scope of products liability actions to manufacturers and statutorily limited sellers." *McNair v. Johnson & Johnson*, 241 W. Va. 26, 40, 818 S.E.2d 852, 866 (2018). Dismissal of an action pursuant to Rule 12(b)(6) is proper "*where the claim is not authorized by the laws of West Virginia*." *Harrison*, 197 W.Va. 651, 478 S.E.2d 104 (1996) (emphasis supplied). Thus, as W. Va. Code §55-7-31(b) does not authorize Plaintiffs' claims asserted against Mountain Heritage, this lawsuit should be dismissed, in its entirety and with prejudice, as to Mountain Heritage.

**2.    The Issue of Removal Is Not Before The Court.**

In their supplemental response, Plaintiffs assert that Mountain Heritage cannot remove this case to federal court.  There are several errors in that statement.  First and foremost, neither defendant has filed a Notice of Removal at this time.  Second, Mountain Heritage is seeking dismissal, not removal, and if successful, would no longer be a party to this litigation to seek removal.  Third, the issue of whether a party has properly removed a case falls within the exclusive jurisdiction of the federal court, and not the state court from which a party has removed a case.  28 U.S.C. § 1446(d); *Ackerman v. ExxonMobil Corp.*, 734 F.3d 237, 249–50 (4th Cir. 2013) ("Because § 1446(d) explicitly states that "the State court shall proceed no further" once removal is effected, 28 U.S.C. § 1446(d), we agree with the Defendants that the statute deprives the state court of further jurisdiction over the removed case and that any post-removal actions taken by the state court in the removed case action are *void ab initio*"). Plaintiffs' argument on removal should be disregarded by the Court in analyzing Mountain Heritage's Motion to Dismiss.

## CONCLUSION

As discussed and demonstrated, Plaintiffs claim against Mountain Heritage fails. Accordingly, Mountain Heritage is barred by the West Virginia Innocent Seller statute (W. Va. Code, §55-7-31), and Mountain Heritage respectfully requests that this Honorable Court enter an Order granting the relief requested in this Defendant's Motion to Dismiss, and dismissing this action with prejudice as to Mountain Heritage.

Respectfully submitted,

DICKIE, McCAMEY & CHILCOTE, L.C.

By: _BreiAnne Varner Redd_
BreiAnne Varner Redd, Esq. (WV #10894)
The Wagner Building
2001 Main Street, Suite 501
Wheeling, WV  26003
Phone: 304-233-1022/Fax: 888-811-7144
E-mail:  bredd@dmclaw.com

and

Christopher T. Sheean, Esq. (IL#6210018)
(*admitted pro hac vice*)
Swanson, Martin & Bell, LLP
330 N. Wabash Ave., Suite 3300
Chicago, IL 60611
Phone:  (312) 222-8559
Fax:  (312) 321-0990
Email:  csheean@smbtrials.com
*Counsel for Mountain Heritage Outdoors, Inc.*

TROY JARRELL, JR., et al. v.
BARNETT OUTDOORS, LLC, et al.

**Page 1**

```
 1        IN THE CIRCUIT COURT OF MINGO COUNTY
 2                   WEST VIRGINIA
 3
 4   . . . . . . . . . . . . . . . . . . . .
 5   TROY JARRELL, JR., and
     KIMBERLY JARRELL,
 6
              Plaintiffs,
 7
     vs.                      CIVIL ACTION
 8                            NO. 19-C-158
     BARNETT OUTDOORS, LLC, a
 9   Florida Corporation a/k/a
     BARNETT OUTDOORS, INC., and
10   BARNETT CROSSBOWS, PLANO
     SYNERGY HOLDING, INC., a
11   Delaware Corporation, and
     MOUNTAIN HERITAGE OUTDOORS,
12   INC., and PINE MOUNTAIN ARCHERY,
13            Defendants.
14   . . . . . . . . . . . . . . . . . . . .
15
         Deposition of Chad Scyphers taken via Zoom
16   by the Plaintiffs under the West Virginia Rules of
     Civil Procedure in the above-entitled action,
17   pursuant to notice, before Angela L. Curtis, a
     Certified Court Reporter, at Realtime Reporters,
18   713 Lee Street, Charleston, West Virginia, on the
     2nd day of September 2020.
19
20
          REALTIME REPORTERS, LLC
21        ANGELA L. CURTIS, CCR
             713 Lee Street
22        Charleston, WV  25301
             (304) 344-8463
23        realtimereporters.net
24
```

**Page 2**

```
 1   APPEARANCES:
 2
     APPEARING FOR THE PLAINTIFFS:
 3
          Mark H. Mitchell, Esquire
 4        30 East Second Avenue
          Williamson, WV  25661
 5
 6   APPEARING FOR THE DEFENDANTS
     BARNETT OUTDOORS, LLC and
 7   MOUNTAIN HERITAGE OUTDOORS, INC.:
 8        Christopher T. Sheean, Esquire
          SWANSON, MARTIN & BELL, LLP
 9        330 North Wabash Avenue, Suite 3300
          Chicago, IL  60611
10
          Melissa Barr, Esquire
11        DICKIE, MCCAMEY & CHILCOTE, L.C.
          The Wagner Building
12        2001 Main Street, Suite 501
          Wheeling, WV  26003-2854
13
14
15
16
17
18
19
20
21
22
23
24
```

**Page 3**

```
 1                  EXAMINATION INDEX
 2   BY MR. MITCHELL . . . . . . . . . .   5
 3   BY MR. SHEEAN . . . . . . . . . .   126
 4   RE BY MR. MITCHELL. . . . . . . .   131
 5   RE BY MR. SHEEAN. . . . . . . . .   142
 6   RE RE BY MR. MITCHELL . . . . . .   143
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

**Page 4**

```
 1                   EXHIBIT INDEX
 2   Exhibit 1     Ghost 410 Owner's Manual
 3
 4
 5
     *Exhibit 1 was received on 9-4-20, thus was not
 6   marked during the deposition.
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

EXHIBIT
1
ALL-STATE LEGAL®

TROY JARRELL, JR., et al. v.
BARNETT OUTDOORS, LLC, et al.

CHAD SCYPHERS
09/02/2020

Page 5

1    C H A D   S C Y P H E R S
2  was called as a witness by the Plaintiffs,
3  pursuant to notice, and having been first duly
4  sworn, testified as follows:
5
                    EXAMINATION
6
7  BY MR. MITCHELL:
8     Q.   State your full name and date of birth
9  please, sir?
10    A.   Chad Scyphers, 9-19-78.
11    Q.   How are you employed?
12    A.   I'm an employee of Mountain Heritage.
13    Q.   What's your job title?
14    A.   Employee.
15    Q.   You have no other title other than that?
16    A.   No, sir.
17    Q.   What are your job duties?
18    A.   Just take care of the retail part of
19  the business.
20    Q.   At the time Mountain Archery sold my
21  client, Troy Jarrell, a Ghost 410 in September
22  of 2017; is that correct?
23    A.   I'm assuming. I'm not sure.
24          MR. SHEEAN: Object to the form.

Page 6

1     Q.   Did you -- prior to the deposition, did you
2  check to see whether or not my client had purchased
3  a crossbow from Pine Mountain Archery?
4     A.   No.
5     Q.   I'm sorry?
6     A.   I take care of the retail front business.
7  I'm not sure what goes on on the internet side.
8     Q.   My question though was prior to today did
9  you check to see whether or not my client had
10  purchased a Ghost 410 from Pine Mountain Archery.
11          MR. SHEEAN: Object for form.
12    A.   No.
13    Q.   Pardon?
14          MR. SHEEAN: No.
15    A.   No.
16    Q.   My client tells me the reason that he
17  bought the 410 was that it had an automatic
18  dry-fire safety trigger mechanism. Can you tell me
19  what that is?
20    A.   If you cock the bow properly, it goes on
21  safety and if you put a bolt in there, it will not
22  fire. Put a bolt in then disengage the safety then
23  it will fire.
24    Q.   Bear with me just a second. What is the

Page 7

1  purpose of the anti dry-fire mechanism?
2          MR. SHEEAN: Object to the form. You
3  can still answer it, Mr. Scyphers.
4     A.   Can you repeat that question again? Sorry.
5     Q.   What is the purpose of the anti dry-fire
6  mechanism?
7          MR. SHEEAN: Same objection.
8     A.   I guess basically when you cock the bow
9  properly it goes on safety. It keeps it from dry
10  firing.
11    Q.   What is dry firing?
12    A.   If there is no bolt in the crossbow, if it
13  would go off, that would be a dry fire.
14    Q.   How can it go off if there's no bolt?
15    A.   I'm not sure. Shouldn't.
16    Q.   My client says to cock the crossbow he used
17  a cocking rope and he pulled the rope up until he
18  heard a click. Then he slowly released the
19  pressure on the cocking rope and the string was
20  retained. Is that how you properly cock a
21  crossbow?
22          MR. SHEEAN: Object to the form.
23    A.   Yes. You pull the rope back until it
24  engages the safety and it's properly cocked.

Page 8

1     Q.   He pulled it back until he heard a click.
2  Does that mean the safety is engaged?
3          MR. SHEEAN: Object to the form. You
4  can answer.
5     A.   Yeah. Again, I mean, you put the rope back
6  until the safety is engaged.
7     Q.   How do you know if the safety is engaged?
8     A.   On the side of the crossbow there's safety
9  on the side of the crossbow.
10    Q.   And have you cocked a Barnett crossbow?
11    A.   Yes.
12    Q.   Can you see the safety in the cocking
13  position?
14    A.   If the crossbow is cocked, it should go on
15  safe, yes.
16    Q.   I didn't understand your answer. Can you
17  repeat that?
18    A.   If you properly cock the crossbow, it
19  automatically puts it on safe so it should be in
20  the safe position when the string is pulled back.
21    Q.   Tell me how -- do you properly cock
22  crossbows?
23    A.   Yes.
24    Q.   How do you do it?

TROY JARRELL, JR., et al. v.
BARNETT OUTDOORS, LLC, et al.

CHAD SCYPHERS
09/02/2020

Page 9

1    A.   Like I just said, you put the string, it
2  goes behind the scope, there's a groove, you put
3  the two hooks into the string of the crossbow, you
4  pull it back and it goes on safe.
5    Q.   How do you know it goes on safe?
6    A.   You can visually physically look and see it
7  goes on safe.
8    Q.   Do you visibly look while you're still
9  holding the rope?
10    A.   You can.
11    Q.   To properly do it are you suppose to look
12  before you let go?
13    A.   Yeah, that's the way I do it, I mean.
14    Q.   I want to understand how you do it.  I'm
15  not sure that I do.  You pull it back until you see
16  the safety engaged; right?
17    A.   Yes.
18    Q.   You do that by looking?
19    A.   Yes.
20    Q.   All right.  When you're looking, do you
21  still have the tension on the cocking rope?
22    A.   Yes.
23    Q.   So you're holding it up like this, then
24  what do you do, do you go down and look at the side

Page 10

1  of the crossbow?
2    A.   Yes.  I mean, it's not hard.  All you do
3  is --
4    Q.   I wasn't suggesting it was hard.  I was
5  just trying to figure out how you do it.  So you're
6  holding it up as I'm showing, then you look over to
7  the side, you look down at the safety and you see
8  that it's engaged.  Is that accurate so far?
9    A.   Yes.
10    Q.   Then you let go of the tension on the rope?
11    A.   Yes.
12    Q.   And you consider it then to be properly
13  cocked?
14    A.   Yes.
15    Q.   There's nothing else in your view that you
16  have to do to conclude that this crossbow is
17  properly cocked?
18    A.   No.
19    Q.   Is that correct?
20    A.   Yes.
21    Q.   I'm sorry?  You need to answer verbally so
22  we can hear you.
23    A.   That was a yes.
24    Q.   Just so the record's clear, there's no

Page 11

1  other actions you take to assure yourself that the
2  crossbow is properly cocked?
3    A.   No.
4    Q.   Which side of Barnett crossbow is the
5  safety on?
6    A.   I'm pretty sure it's an ambidextrous
7  safety, so both sides.
8    Q.   Safety on both sides of the Ghost 410?
9    A.   If I recall correct, yes.
10    Q.   When did you first shoot a crossbow?
11    A.   Ten or twelve years ago roughly.
12    Q.   Did someone teach you how to properly cock
13  a crossbow?
14    A.   Yeah, I mean, someone showed me.
15    Q.   Do you recall who that was?
16    A.   I do not.
17    Q.   What you just described to us is what you
18  believe to be the proper way to cock a crossbow, is
19  that whatever is taught you how to do it?
20    A.   That's the manual, the Barnett manual.
21    Q.   As I understand your answers, I'm sorry,
22  were you finished?
23    A.   I was just saying the manual in the, with
24  the crossbow, the way I described, that's how you

Page 12

1  cock the crossbow.
2    Q.   In what's called discovery I asked your
3  attorney some questions and one of the answers was
4  that you had read the Barnett Ghost 10 (sic)
5  owner's manual prior to the time in September of
6  2017 when this crossbow was sold to Troy Jarrell,
7  is that accurate?
8        MR. SHEEAN:  Object to the form.
9  Mischaracterizes the evidence.  You can answer.
10    A.   Yes, I've read the manual.
11    Q.   And you have read it before 2017 as I
12  understand the answer that was provided to me.
13    A.   Yes.
14        MR. SHEEAN:  Object to the form.
15    Q.   Your answer is yes you did read the
16  crossbow manual for the Ghost 410 prior to 2017;
17  correct?
18    A.   Yes.
19    Q.   And your recollection of that manual is
20  that it coincides with the way that you just told
21  us how to properly cock a crossbow; is that
22  correct?
23    A.   If my memory serves me well, yes.
24    Q.   Have you reviewed the Barnett crossbow

Page 53

1    Q.  Has he been during any part of this
2  deposition?
3    A.  No.
4    Q.  We thought we saw him there, but you say
5  he's not been in there?
6    A.  No.
7    Q.  Did you, during the break, have an
8  opportunity to talk to Mr. Sheean?
9    A.  No.
10    Q.  You and Mr. Sheean didn't talk during the
11  break?
12    A.  No.
13    Q.  Did you and Mr. Mabe talk?
14    A.  No.
15    Q.  All right.  When we left off we were on --
16  about to start on dot number 3.  Do you see it
17  there, "Slowly release?"
18    A.  Yes.
19    Q.  It reads "Slowly release hand pressure on
20  the string until you are sure it is secure in the
21  trigger mechanism."  What does that mean?
22        MR. SHEEAN:  Object to the form.
23    Q.  What does that mean to you?
24    A.  That means to me if you've got your hands

Page 54

1  on the string that you're pulling back with, slowly
2  release the pressure, make sure it is secure in the
3  trigger mechanism.
4    Q.  Well, if the person slowly releases the
5  hand pressure on the string and the string stays in
6  place, what does that mean to you?
7        MR. SHEEAN:  Object to the form.
8    A.  If you pull back and engage the safety and
9  the string says there, it should be properly
10  cocked.
11    Q.  Well, we covered this, but when you hear
12  the click you've engaged the safety; correct?
13        MR. SHEEAN:  Object to the form.
14    Q.  That's what you testified to earlier.  When
15  you hear the click, the click means that the safety
16  is engaged, is that accurate?
17        MR. SHEEAN:  Object to the form.
18    A.  Whenever the safety is pulled back into the
19  safe position, yes, it should be safe to take your
20  pressure off the string.
21    Q.  I thought we covered this, but when you
22  hear a click, doesn't that tell you that the safety
23  has engaged?
24        MR. SHEEAN:  Object to the form.

Page 55

1    Q.  We covered this.
2        MR. SHEEAN:  Object to the form.
3    Q.  When you hear a click, it means that it is
4  locked into the trigger mechanism and the safety is
5  engaged, isn't that correct?
6    A.  Yes.
7    Q.  All right, so when you slowly release hand
8  pressure on it, it stays in the string, that means,
9  doesn't it, that the crossbow is now cocked with
10  the safety on, that's what the next line says, do
11  you agree?
12    A.  Yes.
13    Q.  So to be clear, if a user slowly releases
14  hand pressure on the string and it stay in retained
15  by the string or trigger mechanism, that means the
16  crossbow is now cocked with the safety on it, do
17  you agree?
18        MR. SHEEAN:  Object to the form.
19    A.  Yes.
20    Q.  Again, I'm just reading right from the
21  manual here.  This user manual is the instructions
22  for how a user is to cock a crossbow, do you agree?
23    A.  Yes.
24    Q.  And this manual tells me that if I hear a

Page 56

1  click and slowly release hand pressure on it, the
2  crossbow is cocked with the safety on, do you agree
3  that's what it says?
4        MR. SHEEAN:  Object to the form.
5    A.  That's what it says, yes.
6    Q.  But now you've added, I think, another
7  element to what you believe to be proper crossbow
8  cocking and that element is that while you're
9  pulling the string up, before you release pressure
10  on the string, that you visually look and see that
11  the safety has engaged; is that correct?
12    A.  That's correct.
13    Q.  You think -- strike that.  When you cock a
14  crossbow, and you think you do it properly, you
15  look to see that the safety has engaged; correct?
16    A.  I do.  I mean, it does make an audible
17  clicking sound, but I look --
18    Q.  Okay.
19    A.  -- that it is cocked and on safe.
20    Q.  All right.  You told us that you thought
21  that the Ghost 410 had an ambidextrous safety on
22  it.  Do you remember that?
23    A.  Best of my knowledge.
24    Q.  Does the Barnett Ghost 410 have a label on

TROY JARRELL, JR., et al. v.
BARNETT OUTDOORS, LLC, et al.

CHAD SCYPHERS
09/02/2020

Page 69

1    A.  I see that.
2    Q.  Do you understand that?
3    A.  Yes.
4    Q.  Do you believe that to be true?
5    A.  Yes.
6    Q.  So if a user has followed the procedure to
7  cock the crossbow that we discussed, that crossbow
8  should not fire in any other circumstances without
9  an arrow fully loaded into the trigger mechanism,
10  do you have agree?
11    A.  I agree.
12    Q.  All right.  My client says that he followed
13  the cocking procedure that we just went through
14  meticulously and that he had not inserted an arrow
15  into the crossbow and the crossbow discharged.  Do
16  you have any possible explanation for how that
17  occurred?
18    A.  I do not.
19    Q.  Could it be that the crossbow was
20  defective?
21        MR. SHEEAN:  Object to the form.
22    A.  I'm not sure, sir.
23    Q.  Have you ever seen a defective anti dry
24  fire trigger mechanism on any crossbow?

Page 70

1    A.  No, sir.
2    Q.  Have you ever seen one on a Barnett
3  crossbow?
4    A.  No, sir.
5    Q.  Have you ever replaced an anti dry fire
6  trigger mechanism on any crossbow?
7    A.  No, sir.
8    Q.  So if my client followed the instructions
9  that are set forth as to how to cock a crossbow and
10  if my client had not put a trigger -- had not put
11  an arrow into the trigger mechanism, you have no
12  possible explanation for why or how the crossbow
13  went off?
14    A.  I do not.
15    Q.  I'm going ask you to speculate.
16        MR. SHEEAN:  You are going to ask hi
17  to speculate?
18        MR. MITCHELL:  Yes.
19    Q.  Can you conceive of any circumstances or
20  conditions under which it should have discharged?
21        MR. SHEEAN:  Objection.  Calls for
22  speculation.
23    A.  I mean, if it was cocked back correctly, I
24  don't see how it could discharge itself.

Page 71

1    Q.  If it were cocked back as per the cocking
2  instructions that we just reviewed, you don't see
3  how it could have discharged?
4        MR. SHEEAN:  Object to the form.
5    A.  No, sir.
6    Q.  Earlier you mentioned to me about one way
7  of making sure the arrow is still fully in the
8  trigger mechanism, you could either look or you
9  could push the arrow back a second time.  You
10  mentioned to me that you wanted to keep your arrow
11  out of the flight path.
12        MR. SHEEAN:  Object to the form.  Is
13  that a question?
14    Q.  I'm not sure that it was.  I'm sorry.
15  Strike that.  The next section says "The crossbow
16  will now fire when the trigger is pulled."  Do you
17  see that?
18    A.  Yes.
19    Q.  "And the safety must," in all caps, "be
20  disengaged in this manner prior to every shot."
21  What does that mean?
22        MR. SHEEAN:  Object to the form.
23    A.  That when you basically put the -- engage
24  the safety it is ready to be fired.

Page 72

1    Q.  Are there any circumstances that you're
2  aware of where it would not be necessary to
3  disengaged the safety prior to taking a shot?
4    A.  If you don't disengage the safety it won't
5  fire.
6    Q.  The next thing, and we'll move on, is "Be
7  sure to keep your fingers below the stock fore end
8  (flight track) while shooting."  Do you see there?
9    A.  Yes.
10    Q.  This goes back, I guess, to the fact that a
11  number people were injured letting their hand ride
12  up like they do when you fire a rifle.  Is that
13  your understanding?
14        MR. SHEEAN:  Object to the form.
15    A.  Yes.
16    Q.  And to your knowledge, in the -- or to your
17  knowledge and recollection, in any of the Barnett
18  crossbow owner's manuals that you've read, does it
19  state that you should keep your -- otherwise keep
20  your hands out of the flight path of the string?
21        MR. SHEEAN:  Object to the form.
22    A.  Well, like the photo shows, that's the
23  correct way to do it.  You don't want to put your
24  thumb up there.

TROY JARRELL, JR., et al. v.
BARNETT OUTDOORS, LLC, et al.

CHAD SCYPHERS
09/02/2020

Page 77

1 nothing unsafe about putting your hand in the path
2 of the string because it can't go off.
3          MR. SHEEAN: Object to the form.
4     Q.  Do you agree?
5     A.  Yes.
6     Q.  All right.  And that helps me understand
7 why you all sell -- you sell -- can you see this
8 there, the Barnett decocking bolt, do you see that?
9     A.  Yes.
10     Q.  And you guys sell these; right?
11     A.  We have, yes.
12     Q.  You don't sell them anymore?  I thought I
13 saw them on there just a night or two ago.
14     A.  Again, I'm not on the --
15     Q.  Online side of it?  So you don't sell them
16 in the -- you say you sold them in the store, but
17 you don't know if you sell them right now?
18     A.  To be honest, sir, I don't know if we have
19 any or not.
20     Q.  My question is this:  Is there any way to
21 load this without putting your hand in the path of
22 the string of a cocked crossbow?
23     A.  That's the only way I can see you load it.
24 You have to lay it in the rail and slide it back

Page 78

1 into the trigger mechanism.
2     Q.  And at that point your hand is going to be
3 in the path of the string if the crossbow were, for
4 whatever reason, to discharge; correct?
5     A.  Yeah.  I mean, yes, if you load it that
6 way, but if it's on safe it should not discharge.
7     Q.  Do you know of any other way to load this?
8 I mean, you're talking about taking a pair of
9 channel locks or something?
10     A.  No.  I mean, normally people use their hand
11 to load it.
12     Q.  Again, so just for clarity, you don't know
13 of any way to load this by hand without getting
14 your hand in the path of the string of a cocked
15 crossbow; is that correct?
16     A.  Yes.
17     Q.  I'm going to move on, but I just want to
18 close this area out.  You'd agree with me that it
19 would not be fair to say to some user who had
20 cocked the crossbow exactly like we went over that
21 they had improperly cocked the crossbow, do you
22 agree?
23          MR. SHEEAN: Object to the form.
24     A.  Yes.

Page 79

1     Q.  Have you, in all the times that you've --
2 strike that.  Have you ever failed to fully pull
3 the string into the trigger mechanism?
4          MR. SHEEAN: Object to the form.
5     A.  No, sir.
6     Q.  What I'm getting at, you're batting a
7 hundred percent.  You've never tried to cock a
8 crossbow and not been able to get it to retain the
9 string?
10     A.  You say not retain it?
11     Q.  Yes, sir.
12     A.  No.  Out of all the crossbows I've cocked,
13 it holds it and retains it and puts it on safe.
14     Q.  Okay.  So you -- maybe this helps us out.
15 I'm not able to do it every time.  With all my
16 strength, sometimes I have to give up and let it
17 back down.  You've never had that issue with a
18 crossbow?
19     A.  No, sir.  I don't have no problem doing
20 that.
21     Q.  All right.  Well, I applaud you on your
22 upper body strength.  Have you ever pulled it up
23 and it be retained and you then look and see that
24 the safety has not engaged?

Page 80

1     A.  So you're saying on the initial cocking of
2 the rope --
3     Q.  You pull it up, as I understand the way you
4 do it, you pull it up and while you're still
5 holding the strings you look at the safety to make
6 sure it's engaged?
7     A.  Yes.
8     Q.  How far do you bend over to do that?
9     A.  Just depends on the crossbow.  There's
10 different lengths of crossbow, so.
11     Q.  Talking about a Barnett.  Let's talk about
12 a Barnett crossbow.
13     A.  There's different lengths on the Barnett
14 crossbows also.
15     Q.  Okay.  Good point.  Let's talk about a
16 Barnett 410 crossbow.  Now, when you're cocking a
17 Barnett crossbow and you've got it pulled up, my
18 understanding what your practice is you look to
19 make sure the safety is engaged; correct?
20     A.  Yes.
21     Q.  You say you can see it in that position;
22 correct?
23     A.  Yes.
24     Q.  I'm asking how far do you have -- what kind

TROY JARRELL, JR., et al. v.
BARNETT OUTDOORS, LLC, et al.

CHAD SCYPHERS
09/02/2020

Page 81

1 position do you put yourself in to be able to see
2 it?
3          MR. SHEEAN:  Object to the form.
4    A.  Normally, I mean, my hands, it's not up
5 here, it's here, so.
6    Q.  You're talking about the height -- your
7 hands are about the height of your nipples at that
8 point?
9    A.  Roughly.  But, I mean, it's not hard to
10 just look over to see.
11   Q.  Do you have to bend at the waist to do it
12 or can you do it just with your head?
13   A.  I can just bend with my head and look.
14   Q.  Okay.  Have you ever done that and saw,
15 while you're still holding it up, that it has not
16 fully engaged?
17   A.  No, sir.
18   Q.  That's never happened to you in all the
19 times you've cocked a crossbow?
20   A.  No, sir.
21   Q.  You've never had to pull a second time?
22   A.  No, sir.
23   Q.  Have you heard the term recocking?
24   A.  No, sir.  Not familiar with the recocking

Page 82

1 term, no.
2    Q.  Do you ever watch any videos online related
3 to crossbows?
4    A.  Very -- very seldom.
5    Q.  Have you ever seen any videos where they're
6 demonstrating how to recock a crossbow?
7    A.  If you're referring to after it's fired
8 I've not.
9    Q.  No, sir.  I'm talking about pulling the
10 string up and looking and seeing that it's not --
11 the safety is not fully engaged and giving it
12 another tug?
13   A.  No, sir.
14   Q.  The click that we talked about earlier
15 that's in the book that tells you that the crossbow
16 is now locked into the trigger mechanism, do you
17 know what makes that clicking sound?
18   A.  I'm not sure.
19   Q.  Is there -- have you ever cocked a Barnett
20 crossbow and heard more than one click?
21   A.  I don't recall, sir.  I pull it until the
22 safety is on and, like you said, it does make a
23 click.
24   Q.  So as far as you can recall you've only

Page 83

1 ever heard one click and you don't know what makes
2 it click; correct?
3    A.  Correct.
4    Q.  I understand that you've never experienced
5 cocking a crossbow and looking down and seeing that
6 the safety was not actually engaged.  Do you know
7 if that ever happened to anyone else?
8    A.  No, sir.
9    Q.  No customer's ever said that that happened
10 to them?
11   A.  No, sir.
12   Q.  And you've never seen anyone talking about
13 that online?
14   A.  No, sir.
15   Q.  Do you attend trade shows like the Shot
16 Show and such from time to time?
17   A.  I've never been to the Shot Show, no, sir.
18   Q.  What shows have you been to?
19   A.  Couple of the APA shows.
20   Q.  It's your testimony they never discussed
21 recocking at any of those shows?
22   A.  No, sir.
23   Q.  So, well, what I'll call the problem for a
24 second, the problem of pulling the crossbow up and

Page 84

1 looking and seeing that it's not fully engaged,
2 you've never heard that discussed in any forum;
3 correct?
4    A.  Sir, I don't -- I really don't -- like the
5 Facebook thing, I don't get online really at all so
6 no, sir.
7    Q.  I know, but you go to shows and you've got
8 some crossbow buddies, don't you?
9    A.  When you go -- what do you mean by going to
10 shows with crossbow buddies?
11   Q.  Let me just ask you this way:  Have you in
12 your lifetime ever heard anybody but me and you
13 talk about pulling a crossbow up to cock it and
14 looking down and seeing it's not fully engaged?
15   A.  No, sir.
16   Q.  All right.  If a person were to pull the
17 crossbow up -- strike that.  If a user were to pull
18 the rope cocking device up and look and see that
19 the safety had not fully engaged, what should the
20 user do?
21          MR. SHEEAN:  Object to the form.
22   A.  If they're cocking it and it's -- I mean,
23 if they're pulling it and pull it all the way back
24 it should engage, the safety.  I don't see how it

Page 85

1 couldn't. I mean, with your -- unless somebody
2 doesn't pull the string all the way up to actually
3 hit the trigger mechanism.
4    Q.   Have you ever seen any crossbow retain the
5 string without safety being engaged?
6         MR. SHEEAN:  Object to the form.
7    A.   No, sir.
8    Q.   If a crossbow were to retain the string and
9 the safety not engage, would that be a dangerous
10 situation in your view?
11        MR. SHEEAN:  Object to the form.
12   A.   If the crossbow is cocked, it's retaining,
13 it should be on safety.
14   Q.   What if you retain the string and the
15 safety is not engaged?
16        MR. SHEEAN:  Object to the form.
17   A.   I don't know if that's possible.
18   Q.   Bear with me a minute.  I'm going load a
19 video up for you and we'll look at it together.  Do
20 you see that video, sir?
21   A.   I can.
22   Q.   All right.  We'll play it for you now.
23        MR. MITCHELL:  Volume, Heather.
24   Q.   Bear with us a moment.  Sir, while they're

Page 86

1 getting this lined up properly, what I want you to
2 do is watch it very carefully and tell me where he
3 may --
4         MR. MITCHELL:  Yeah, start it over.
5    Q.   -- tell me where he departed from the
6 instructions that are in the manual that you and I
7 went over?
8         MR. SHEEAN:  Object to the form.
9    Q.   Can you hear that?
10   A.   No.
11   (Whereupon the video was played after which the
12 deposition continued as follows:)
13        MR. MITCHELL:  Rack it up again.
14 Let's watch it again.
15   (Whereupon the video was played after which the
16 deposition continued as follows:)
17   Q.   Could you hear that, Mr. Scyphers?
18   A.   Vaguely.  I got bits and pieces of it.
19   Q.   We'll try it again.
20        MR. MITCHELL:  Can you pause it,
21 Heather?
22   Q.   She's paused it for a second.  Can you hear
23 it okay now?
24   A.   I still can't hear it.

Page 87

1         MR. SHEEAN:  I can't either.
2    Q.   Can you see it well enough?
3    A.   I can see, yeah.
4         MR. SHEEAN:  It's jumping around a
5 lot.
6         MR. MITCHELL:  Play it, Heather.
7         (Whereupon the video was played after
8 which the deposition continued as follows:)
9         MR. SHEEAN:  I'm going to object to
10 any questions regarding this video as improper.
11   Q.   All right.  Did you hear, did you see him
12 do anything that was not consistent with -- hold on
13 for just a minute.  Were you able to see how he
14 cocked the crossbow?
15   A.   Yes.
16   Q.   Did he do it as the instructions that you
17 and I reviewed this morning in the Barnett crossbow
18 manual instructed?
19        MR. SHEEAN:  Object to the form.
20   A.   It appears so.
21   Q.   Do you see -- did you see that the anti dry
22 fire mechanism had not engaged?
23        MR. SHEEAN:  Object to the form.
24   A.   I seen that.

Page 88

1    Q.   You saw that the safety had not gone to the
2 on position; correct?
3         MR. SHEEAN:  Object to the form.
4    A.   It appears so.
5    Q.   Do you have any explanation for how that
6 could happen?
7         MR. SHEEAN:  Object to the form.
8    A.   I do not.
9    Q.   Do you agree with me that crossbow is
10 defective?
11        MR. SHEEAN:  Object to the form.
12   A.   I could not say, sir.
13   Q.   Would you agree with me that it's
14 dangerous?
15        MR. SHEEAN:  Object to the form.
16   A.   I couldn't say, sir.
17   Q.   Do you see any risk of the crossbow going
18 off, discharging inadvertently or unintentionally?
19        MR. SHEEAN:  Object to the form.
20   A.   I couldn't say, sir.
21   Q.   What can you say about the video that you
22 just watched?
23        MR. SHEEAN:  Object to the form.
24   A.   Showed him cocking it.

TROY JARRELL, JR., et al. v.
BARNETT OUTDOORS, LLC, et al.

CHAD SCYPHERS
09/02/2020

Page 129

1 instructions according to this manual, the customer
2 should follow those instructions; correct?
3    A.  Yes, sir.
4    Q.  And those instructions would cover the rope
5 cocking device method; correct?
6    A.  Yes, sir.
7    Q.  Now, you weren't present during that video
8 that was shown, isn't that true?
9    A.  Correct.
10    Q.  And you don't know specifically whether or
11 not the gentlemen that that crossbow (sic) properly
12 cocked that crossbow, do you?
13    A.  Correct.
14    Q.  Now you were asked some questions about
15 universal crossbow manual.  Do you recall that?
16    A.  Yes.
17    Q.  All right.
18        MR. SHEEAN:  You can take down Exhibit
19 1.  Thank you.
20    Q.  Bear with me for one second.  Now you were
21 asked about a section of -- hold on one sec here.
22 You were asked about a section, can you see that --
23 I can't see it right now.  I'm trying to share with
24 you my screen.  Can you see the numbers 1, 2, 3, 4,

Page 130

1 5, 6?
2    A.  Yes.
3    Q.  And you see number 5 right here, you were
4 asked about that, do you recall that?
5    A.  Yes.
6    Q.  That first sentence of Paragraph 5 says
7 "Firmly grip the handles of the rope cocking device
8 with both hands and pull the crossbow string into
9 the trigger mechanism until you hear an audible
10 click and the safe engages to the safe position."
11 Do you see that?
12    A.  Yes.
13    Q.  Well, it tells you to listen for an audible
14 click; right?
15    A.  Yes.
16    Q.  And it also tells you to make sure the
17 safety is engaged; correct?
18    A.  Yes.
19    Q.  Do you know of any way to check to see if
20 the safety is engaged other than visually looking
21 to see if it's switched to on?
22    A.  I mean, other than, yeah, I mean, just if
23 it's on or safe position.
24    Q.  Okay, so would you agree with me that the

Page 131

1 only way to see whether or not the safety has
2 engaged when you're pulling the rope cocking device
3 up is to visually look at the safety?
4    A.  Yes.
5        MR. SHEEAN:  Those are all the
6 questions I have.  Thank you.
7        MR. MITCHELL:  I had my mute on, but I
8 object to the whole line of questioning as leading
9 the witness.  I have a few follow ups.
10        EXAMINATION
11 BY MR. MITCHELL:
12    Q.  Describe for us all the differences that
13 you are aware between hand cocking and rope
14 cocking?
15    A.  Hand cocking you basically use your hand
16 and the rope, you have a rope that basically aids
17 in the cocking.
18    Q.  Anything else?
19    A.  No.  No, sir.
20    Q.  If you cock by hand, are you still suppose
21 to listen for a click?
22        MR. SHEEAN:  Object to the form.
23    A.  I believe that's what the owner's manual
24 said.

Page 132

1    Q.  And if you hear a click, does that mean the
2 safety is engaged?
3        MR. SHEEAN:  Object to the form.
4    A.  It's supposed to be.
5    Q.  That's what the manual says; right?
6    A.  Yes.
7    Q.  In all the years you've pulled crossbows
8 that's been your understanding, yes?
9        MR. SHEEAN:  Object to the form.
10    A.  Yes.  I visually look and see if it -- if
11 the safety is back.
12    Q.  But you and I went through the manual and
13 the universal manual, we never saw the word look,
14 did we?
15        MR. SHEEAN:  Object to the form.
16    A.  I don't think so.
17    Q.  You don't think so?  We can go back through
18 them again if you want to.  Do you remember seeing
19 the word look at any time in anything we've
20 discussed today?
21        MR. SHEEAN:  Object to the form.
22    A.  No, sir.
23    Q.  Did anyone come to you prior to this
24 deposition and tell you that you should be focusing

TROY JARRELL, JR., et al. v.
BARNETT OUTDOORS, LLC, et al.

CHAD SCYPHERS
09/02/2020

Page 133

1  on and repeating the fact that you look to see that
2  the safety is on?  Remind you you're under oath.
3          MR. SHEEAN:  Mr. Scyphers, if
4  answering this question in any way would require
5  that you divulge communications that you and I had
6  as counsel for your employer, I would instruct you
7  not to answer it.  If you can answer this question
8  without revealing any communications you and I had,
9  please, go ahead and answer it.
10     A.  Can you repeat that question?  Sorry.
11     Q.  Has anyone come to you and said in your
12  deposition, emphasize that you look to see that the
13  safety is engaged?
14         MR. SHEEAN:  Again, I'm going to
15  instruct you, Mr. Scyphers, that --
16         MR. MITCHELL:  He heard that the first
17  time.
18         MR. SHEEAN.  And I'm going to say it
19  again because you asked the question again.  To the
20  extent that answering this question or any other
21  question would require that you reveal
22  communications that you and I had, I'm going to
23  instruct you not to answer it if it would reveal
24  privileged communications with your employers

Page 134

1  attorney.
2     A.  I'm confused so I don't want to answer
3  that.
4     Q.  Has anyone other than Mr. Sheean, including
5  Mr. Mabe or anyone else, told you to emphasize that
6  you looked to see that the safety is engaged?
7     A.  I mean, I do that on my own.
8     Q.  I understand.
9     A.  No one's told, I mean, I do that on my own.
10    Q.  I understand.  You're under oath and you
11  recognize that the penalty for false swearing is up
12  to a year in jail so you have to tell the truth and
13  my question is:  Have you and Mr. Mabe discussed
14  that you should emphasize that you look to see that
15  the safety is engaged?
16         MR. SHEEAN:  I'm going to object.
17  You're badgering the witness.  You can answer, sir.
18    A.  I mean, that's my technique, you know, how
19  I do it so I haven't ask anybody how, you know,
20  nobody's told me how to do it if that's what
21  you're --
22    Q.  Did you and Mr. Mabe discuss what your
23  testimony should be today?
24    A.  No, sir.

Page 135

1     Q.  Not at any time?
2     A.  No, sir.
3     Q.  Have you ever seen instructions for the
4  rope cocking device?
5     A.  Yes, sir.
6     Q.  What does it say about cocking?
7         MR. SHEEAN:  Object to the form.
8     A.  As of right now I do not remember, sir.
9     Q.  To your recollection does it say anything
10  differently than what the owner manual says about
11  hand cocking?
12         MR. SHEEAN:  Object to the form.
13    A.  Again, I don't know, sir.
14    Q.  To your recollection does it use the word
15  look?
16         MR. SHEEAN:  Object to the form.
17    A.  I'm not sure, sir.
18    Q.  Let's put it up on the screen here and I'll
19  go through.
20         MR. MITCHELL:  You're going to have
21  to make it a lot bigger than that.  All right.
22  That should do it.
23    Q.  Can you see it there, Mr. Scyphers?
24    A.  Yeah, it's a little blurry on this end.

Page 136

1     Q.  Is it so blurry that you can't read it?
2     A.  I should be able.  I'll do my best.
3     Q.  I don't want to strain you.  Can you put it
4  back where I can read it?  I'll read it to you and
5  you just have to take my word for it.  "Using the
6  rope cocking device, pull the crossbow string into
7  the trigger mechanism with an audible -- until an
8  audible click is heard and the safety engages.  The
9  crossbow is now cocked and the rope cocking aid can
10  be removed."  Did you hear me?
11    A.  I did.
12    Q.  Did you understand what I read to?
13    A.  Yes.
14    Q.  Can you see it well enough there to confirm
15  that I was telling you the truth when I read it?
16    A.  Towards the bottom, yes, I see it now.
17    Q.  What does that sentence tell you?
18         MR. SHEEAN:  Object to the form.
19    A.  It says, you know, you need to hear an
20  audible click and then the safety is engaged.
21    Q.  When you hear the click it tells you that
22  the safety is engaged; is that correct?
23         MR. SHEEAN:  Object to the form.
24    A.  That's what it says.

IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

TROY JARRELL, JR. and
KIMBERLY JARRELL,

    Plaintiffs,        Civil Action No. 19-C-158

v.

               Judge: Miki J. Thompson

BARNETT OUTDOORS, LLC, et al,

    Defendants.

## CERTIFICATE OF SERVICE

   I hereby affirm that a true and exact copy of the foregoing *MOUNTAIN HERITAGE OUTDOORS, MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS* was forwarded to the following counsel of record via First Class U. S. Mail, postage prepaid, on the ₍ₑₜₕ₎ day of October, 2020:

Mark H. Mitchell (WV #2582)    Robert W. Absten (WV#9818)
Law Offices of Mark H. Mitchell   30 East Second Avenue
31 East Second Avenue     Williamson, West Virginia 25661
Williamson, West Virginia 25661   E-mail: robert.absten@gmail.com
*Counsel for Plaintiffs*      Co-counsel for Plaintiffs


       DICKIE, McCAMEY & CHILCOTE, L.C.

       BY: _____
       Vaughn K. Schultz, Esq. (WV#10700)
       BreiAnne Varner Redd, Esq. (WV #10894)
       The Wagner Building
       2001 Main Street, Suite 501
       Wheeling, WV 26003
       Phone: 304-233-1022/Fax: 888-811-7144
       E-mail: vschultz@dmclaw.com
          bredd@dmclaw.com

       *Counsel for Mountain Heritage Outdoors, Inc.*

<u>IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA</u>

**TROY JARRELL, JR. and KIMBERLY JARRELL,**

**Plaintiffs,**

v.                                                    **Civil Action No. 19-C-158**

**BARNETT OUTDOORS, LLC, a Florida corporation,**
**a/k/a BARNETT OUTDOORS, INC., and BARNETT CROSSBOWS,**
**PLANO SYNERGY HOLDING, INC., a Delaware corporation,**
**and MOUNTAIN HERITAGE OUTDOORS, INC.,**
**a/k/a MOUNTAIN HERITAGE OUTDOORS & TAXIDERMY**
**and PINE MOUNTAIN ARCHERY,**

**Defendants.**

**PLAINTIFFS' RESPONSE TO DEFENDANT MOUNTAIN HERITAGE**
**OUTDOORS, INC.'S REPLY BRIEF AND PLAINTIFFS' MEMORANDUM**
<u>**IN SUPPORT OF AN EXTENSION OF DISCOVERY**</u>

NOW COME the Plaintiffs, **TROY JARRELL, JR. and KIMBERLY**

**JARRELL**, by counsel, Mark H. Mitchell, and submit this *Plaintiffs' Response to*

*Defendant Mountain Heritage Outdoors, Inc.'s Reply Brief and Plaintiffs' Memorandum*

*in Support of an Extension of Discovery.*

I.     PROCEDURAL HISTORY

Plaintiffs' filed their Complaint alleging claims of negligence, strict liability,

breach of warranty, violation of the West Virginia Consumer Credit and Protection Act

(§46A-1 *et seq.*), and product liability claims.   (*See* Complaint, ¶¶ 1 and 3). All

allegations set forth in Plaintiffs' Complaint are ascribed to each of the Defendants,

including Defendant Mountain Heritage Outdoors, Inc.

The Defendant Mountain Heritage Outdoors, Inc. has not answered Plaintiffs'

Complaint, but has filed a Motion to Dismiss "the action" against it based upon its

argument that Plaintiffs have not sufficiently pled, under a Rule 12(b)(6) Motion to


EXHIBIT

Dismiss, the strict liability claims of the innocent seller statute, West Virginia Code § 55-7-31.

The Court held a hearing on July 14, 2020 via Zoom pursuant to the subject Motion to Dismiss. After hearing oral argument, the Court essentially converted the Motion to Dismiss to a Rule 56 Motion for Summary Judgment by establishing a discovery period to determine whether the Defendant seller, Mountain Heritage Outdoors, Inc., may be characterized as an "innocent seller". A key oral argument made by the Defendant during this hearing was that the proposed "discovery period" should be limited to preserve the one-year removal deadline for the remaining Defendant, Barnett, should this Court dismiss the WV Defendant, Mountain Heritage.

Removal is not warranted under the facts and applicable law of this case.  Even if this Court were to Dismiss *all* claims against the Defendant Mountain Heritage, removal of this case to Federal court would be improper under *the involuntary dismissal rule* as decided in *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1166 (4th Cir. 1988).

For this and other reasons, Plaintiffs request this Court deny the Defendant's pending Motion to Dismiss and grant Plaintiffs additional discovery on all claims filed herein.

## II. ARGUMENT

Plaintiffs incorporate the Background, Standard of Review and Argument sections set forth in *Plaintiffs' Response to Defendant Mountain Heritage Outdoors, Inc.'s Motion to Dismiss for Failure to State a Claim*, dated July 10, 2020, as well as the Introduction and Argument sections set forth in *Plaintiffs' Supplemental Response to Defendant*

2

*Mountain Heritage Outdoors, Inc.'s Motion to Dismiss for Failure to State a Claim,* dated October 1, 2020.

### 1.  Plaintiffs Have Presented Evidence of Actual Knowledge of a Defect

West Virginia Code §55-7-31(a)(4)(C) defines "Product liability action" as any civil action brought against a manufacture **or seller** of a product, based in whole or in part on the **doctrine of strict liability** in tort, for or on account of personal injury, death or property damage caused by or resulting from . . . **[t]he failure to provide proper instructions for the use of a product."** (*Emphasis added*). Here, Plaintiffs contend that none of the instructions, the owner's manual *nor the rope cocking device instructions,* provide the proper instructions for the use of the product, a Barnett Ghost 410 crossbow. As Plaintiffs have previously demonstrated, Mountain Heritage employee (alleged "bow technician"), Chad Scyphers, testified over and over that he "looks" to make sure that the safety engages during the crossbow cocking procedure – no matter the method of cocking, either by hand, rope cocking device or crank.  The problem is that *none* of the instructions for the use of the product direct the User to "look" at the safety and is, therefore, contrary to Mr. Scyphers' description of how to properly cock a crossbow.

The Defendant cites testimony and states that Mr. Scyphers had no knowledge prior to 2017, the time of the sale of the subject crossbow to Plaintiffs, of any alleged defect.  Conspicuously, the Defendant cannot proffer any evidence or proof that the owner's manual and/or the rope cocking instructions properly instruct a User to "look" at the crossbow's safety during the cocking procedure, no matter the time period. In fact, Mr. Scyphers (who again testifies that the proper way to cock the crossbow includes

looking at the safety) has testified that he started reading crossbow manuals in 2010 and has read "hundreds" of Barnett owners' manuals throughout his employment with Mountain Heritage. (See Scyphers depo, page 14). Mr. Scyphers further testified that he had read the Barnett Ghost 410 manual prior to the crossbow being sold to Plaintiffs.

### 2. Dismissal under the Innocent Seller Statute would not extinguish all claims against this Defendant

This Defendant has argued that "Plaintiffs must demonstrate evidence of actual knowledge to survive the motion." (October 6, 2020, Defendant Mountain Heritage Outdoors' Reply Brief, Page 2)  This is not true.   The question of whether the facts and evidence demonstrate actual knowledge will ultimately be a question for the jury.   But equally as important, is the fact that Dismissal of the strict liability claim under the innocent seller statute would not extinguish Plaintiffs' remaining viable claims alleged in Complaint, those of negligence, warranty and Consumer Protection violations.   The Defendant fails to address these claims, yet requests the Court dismiss them.

### 3. Plaintiffs' Standard under Rule 12(b)(6) Motion to Dismiss has been met

As Plaintiffs have previously pointed out, the standard under a Rule 12(b)(6) Motion to Dismiss is a simple sufficiency test; the Court should not dimiss the claim unless it appears beyond doubt that Plaintiffs can prove no set of facts in support of his claim.   Plaintiffs argue that they have clearly met the standard under a Rule 12(b)(6) Motion to Dismiss.  Insomuch as the subject motion has effectively been converted into a Rule 56 Motion for Summary Judgment, Plaintiffs have met that standard as well.   Few legal principles in West Virginia jurisprudence are as well-settled as the axiom that "[a]

motion for summary judgment should be granted only when it is clear that there **is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable** to clarify the application of the law." Syl. Pt. 3, _Aetna Cas. & Sur. Co. v. Federal Ins.Co. of New York, 148 W.Va. 160, 133 S.E.2d 770(1963)._ _(Emphasis added.)_

Plaintiffs argue that, at a minimum, the heretofore argued "actual knowledge" question is a genuine issue of fact that should be tried and further, that the **inquiry concerning the facts** has just begun. Discovery so far has been on a limited scale and in a limited time period. No time frame order has been entered in this case. Discovery from the Barnett defendant consists of a single deposition; no discovery responses have been received to date and no 30(b)(7) witness has been produced. The Plaintiffs should not be prejudiced against conducting discovery as the result of a meritless argument to unnecessarily limit the time for discovery.

Additionally, Plaintiffs assert that there are questions whether this Defendant has fully engaged in good faith discovery so far. For example, Plaintiffs properly served a Notice of 30(b)(7) Deposition and Request for Production of Documents that required Defendant Mountain Heritage to designate a witness to testify as to the existence, manner and method by which Defendant Mountain Heritage searched for and produced the documents that it deemed responsive to Plaintiffs' requests for production as well as to testify as to the completeness and authenticity of the document production. The Defendant produced owner/operator, Brian Mabe, to testify on its behalf. During the deposition, Plaintiffs' counsel asked Mr. Mabe if he had produced any documents in the case.

Q.    Have you looked to see if you have any documentation of selling a crossbow to Troy Jarrell?

A.    I have not.

Q.    Have you been asked by anyone to look and see if you could find the paperwork for the sale to Troy Jarrell?

A.    Not that I'm aware of, no.

(Dep. of B. Mabe, Sept. 2, 2020, at Pg. 25, lines 3-13.)

\* \* \* \* \* \* \*

Q.    Did you conduct a document search – did you search for any documents related to this case?

MR. SHEEAN:  I'm going to object to the extent that you have to reveal any communication you had with me, but if you can talk about what you did relative to finding documents without revealing what you and I discussed, please proceed.

A.    I don't think that I did.

(Dep. of B. Mabe, Sept. 2, 2020, at Pg. 71, lines 3-11.)

Pursuant to the Rules, Plaintiffs have contacted opposing counsel in regard to this discovery dispute and have received an affidavit from Mr. Mabe wherein he states: " . . . I am aware because of my familiarity with our records that Mountain Heritage has no documents, other than those produced in this case." (October 7, 2020 Affidavit of Brian Mabe, ¶5.)  Mr. Mabe further avers, " . . . I was aware the documents requested, other than those previously produced, are not in the possession of or accessible to Mountain Heritage; therefore, **no physical search for the documents was required**."

6

(*Id.* ¶8)(*Emphasis added*). The Defendants have produced a total of two documents in this case, the owner's manual and the instructions for the rope cocking device, both of which appear to be documents produced by Barnett and not Mountain Heritage.

For all of these reasons, the Plaintiffs should be granted time to discover the pertinent facts from both Defendants so that this Court, when timely, may fairly rule on all motions.

### 4. <u>The Issue of Removal was Argued Before The Court</u>

This Defendant unquestionably argued and persuaded this Court to act, i.e., by limiting Plaintiffs' scope and time for discovery, in response to an issue of removal. Only after the Plaintiffs have shown that this argument has no merit does the Defendant now argue that "removal should be disregarded by the Court in analyzing Mountain Heritage's Motion to Dismiss." (October 6, 2020, Defendant Mountain Heritage Outdoors' Reply Brief, Argument, Pt. 2, Pg. 7). Plaintiffs agree. And as shown above, Plaintiffs should be granted, pursuant to Rules 26 through 37 of the West Virginia Rules of Civil Procedure, an opportunity to conduct discovery of *all* claims against each Defendant and this Defendant's Motion to Dismiss should be denied.

### III.   CONCLUSION

Plaintiffs respectfully request that this Honorable Court enter an Order denying Defendant Mountain Heritage Outdoors, Inc.'s Motion to Dismiss, and granting Plaintiffs' request for an extension of discovery, and all other such relief as this Court sees just.

TROY JARRELL, JR., and
KIMBERLY JARRELL,
Plaintiffs, by:


_____
MARK H. MITCHELL
PLAINTIFFS' LAWYER


MARK H. MITCHELL
PLAINTIFFS' LAWYER
West Virginia State Bar #2582
Co-Counsel for Plaintiffs
30 East Second Avenue
Williamson, West Virginia 25661
Telephone: (304)235-3902
Facsimile: (304)235-3903
E-mail: mhm@markhmitchell.com

8

## IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

**TROY JARRELL, JR., and**
**KIMBERLY JARRELL,**

      **Plaintiffs,**

v.                                     **Civil Action No. 19-C-158**

**BARNETT OUTDOORS, LLC, a Florida Corporation,**
**a/k/a BARNETT OUTDOORS, INC., and BARNETT CROSSBOWS,**
**PLANO SYNERGY HOLDING INC., a Delaware Corporation,**
**and MOUNTAIN HERITAGE OUTDOORS, INC.,**
**a/k/a MOUNTAIN HERITAGE OUTDOORS & TAXIDERMY**
**and PINE MOUNTAIN ARCHERY,**

      **Defendants.**

## CERTIFICATE OF SERVICE

    I, Mark H. Mitchell, co-counsel for Plaintiffs, do hereby certify that **PLAINTIFFS'**
**RESPONSE TO DEFENDANT MOUNTAIN HERITAGE OUTDOORS, INC.'S REPLY**
**BRIEF AND PLAINTIFFS' MEMORANDUM IN SUPPORT OF AN EXTENSION OF**
DISCOVERY was this day served upon the following parties via facsimile, email and by placing
a true and correct copy of the same in the United States mail, postage prepaid, and addressed as
follows:

Vaughn K. Schultz, Esq. (WV #10700)
BreiAnne Varner Redd, Esq. (WV #10894)
Dickie, McCamey & Chilcote, L.C.
The Wagner Building
2001 Main Street, Suite 501
Wheeling, West Virginia 26003-2854
Telephone: (304)233-1022
Facsimile: (888)811-7144
E-mail: vschultz@dmclaw.com
        bredd@dmclaw.com
*Counsel for Defendants Barnett Outdoors, LLC,*
*and Mountain Heritage Outdoors, Inc.*

Christopher T. Sheean, Esq. (IL #6210018)
Swanson, Martin & Bell, LLP
330 North Wabash Avenue
Suite 3300
Chicago, Illinois 60611
Telephone: (312)222-8559
Facsimile: (312)321-0990
E-mail: csheean@smbtrials.com
*Counsel for Defendants Barnett Outdoors, LLC,*
*and Mountain Heritage Outdoors, Inc.*

    **DATED** this the 16th day of October, 2020.

TROY JARRELL, JR., and
KIMBERLY JARRELL,
Plaintiffs, by:

_____
MARK H. MITCHELL
PLAINTIFFS' LAWYER

**MARK H. MITCHELL**
**PLAINTIFFS' LAWYER**
**West Virginia State Bar #2582**
**Counsel for Plaintiffs**
**30 East Second Avenue**
**Williamson, West Virginia 25661**
**Telephone: (304)235-3902**
**Facsimile: (304)235-3903**
**E-mail: mhm@markhmitchell.com**